Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| SOUTH SIDE CAPITAL LLC<br><br>Demandante-Recurrida<br><br>v.<br><br>INMOBILIARIA L.A. INC., HEALTHCARE CONSULTING SERVICES INC., JOSÉ A. LÓPEZ ALEJANDRO, TANIA CARCASE MOURE Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados<br><br>CORTÉS ENTERPRISES, INC.<br><br>Parte Interventora-Peticionaria | KLCE202300269 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: K CD2011-1722 (802)<br><br>Sobre:<br><br>Incumplimiento de Contrato, Cobro de Dinero y Ejecución de Prendas e Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos, y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 28 de abril de 2023.

Comparece Cortés Enterprises, Inc., en adelante (CE o parte interventora-peticionaria) mediante recurso de *certiorari* y nos solicita que revisemos la *Resolución* emitida el 2 de diciembre de 2022[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). En virtud del referido dictamen, el foro primario permitió la intervención de CE, y declaró *No Ha Lugar* la solicitud de paralización y nulidad de embargo, y ejecución de sentencia.

---

[1] La notificación de dicha resolución tiene fecha del 17 de enero de 2023.

Número Identificador
RES2023_____

Por los fundamentos que se expondrán a continuación, se deniega la expedición de recurso de *certiorari* presentado.

**I.**

Surge de los documentos que obran en el expediente que, el 21 de febrero de 2002, Banco Popular de Puerto Rico (BPPR) e Inmobiliaria L.A., Inc. (ILA) suscribieron un Contrato de Préstamo por la cantidad de $430,000.00 (Contrato #1).[2] En dicho contrato ILA se comprometió a pagar en ciento ochenta (180) plazos la cantidad de $2,388.89 mensuales más los intereses acumulados desde el 21 de marzo de 2002. y así sucesivamente los días 21 de cada mes. Además, el Sr. José A. López Alejandro (en adelante, el señor López Alejandro) era la parte garantizadora.[3]

Años después, el 23 de enero de 2009, Healthcare Consulting Services, Inc. (HCCS) y BPPR suscribieron un Contrato de Préstamo (Contrato #2) por la cantidad de $750,000.00.[4] Además, participó del referido acuerdo, ILA como parte garantizadora, así como los esposos, el señor López Alejandro y la Sra. Tania Carcase Moure (señora Carcase Moure, en conjunto matrimonio López-Carcase), como parte garantizadora solidaria prendataria. Ese mismo día, BPPR extendió a HCCS una línea de crédito mediante un contrato por la suma de $800,000.00.[5] Mediante dicho contrato ILA acordó constituir un gravamen mobiliario como garantía del préstamo y de la línea de crédito.[6] Específicamente, los bienes dados en prenda eran tres (3) pagarés hipotecarios valorados en: 1) $430,000.00; 2) $250,000.00; y 3) $169,000.00.[7] Las tres (3) hipotecas afectaban una propiedad inmueble, la cual era la Oficina Núm. 1105 del Condominio Capital Center en San Juan, Puerto Rico (Oficina).

---

[2] Apéndice del recurso de *certiorari*, a las págs. 17-32.
[3] Junto con el Contrato #1, ILA cedió al BPPR como prenda un pagaré hipotecario por la cantidad de $430,000.00.
[4] Apéndice del recurso de *certiorari*, a las págs. 57-74.
[5] *Íd.*, a las págs. 77-93.
[6] *Íd.*, a las págs. 100-103.
[7] Todos estos eran a favor del BPPR, vencederos a la presentación. Apéndice del recurso de *certiorari*, a las págs. 105-119.

De igual modo, ese mismo día, el matrimonio López-Carcase, como garantizador, entregó en prenda un pagaré hipotecario por la cantidad de $500,000.00 a favor de BPPR.[8] Este gravamen fue constituido sobre el Apartamento Núm. 9 en el Condominio *The Woods at Palmas del Mar* en Humacao, Puerto Rico (Apartamento Núm. 9).

El 1 de agosto de 2011, BPPR presentó una *Demanda* sobre incumplimiento de contrato, cobro de dinero y ejecución de prenda e hipoteca en contra de ILA, HCCS, el señor López Alejandro, la señora Carcase Moure y la Sociedad Legal de Gananciales compuesta por ambos (SLG).[9] En su demanda alegó que éstos incumplieron con sus obligaciones de pago a pesar de los intentos infructuosos que realizaron para cobrarlos. Además, expuso que como acreedor optó por acelerar las deudas, y le solicitó al TPI que ordenara el pago de las sumas adeudadas.

El 15 de noviembre de 2011, el foro primario emitió una *Orden* en la cual indicó que el caso continuaría su curso ordinario, aunque la hipoteca del Apartamento Núm. 9 no estaba inscrita en el Registro de la Propiedad.[10]

Así las cosas, el 14 de diciembre de 2011, el BPPR presentó anotación de la demanda ante el Registro de la Propiedad, mediante el Asiento Núm. 147 del Diario Núm. 908.[11] Luego el BPPR presentó *Moción en Solicitud de Sentencia Sumaria Parcial*, mediante la cual, solicitó al TPI que dejara pendiente de ejecución la hipoteca del apartamento concernido mientras dicho gravamen fuera inscrito en el Registro de la Propiedad.[12]

---

[8] Apéndice del recurso de *certiorari*, a las págs. 124-138.
[9] *Íd.*, a las págs. 6-16.
[10] *Íd.*, a la pág. 146.
[11] Apéndice del recurso de *certiorari*, a la pág. 296. También este mismo día, ILA, HCCS, el señor López Alejandro, la señora Carcase Moure y la SLG contestaron la demanda en su contra. Además, incoaron una reconvención en contra de BPPR y una demanda contra tercero en contra del Departamento de Salud de Puerto Rico (DS) y Management Consultant and Computer Services, Inc. (MCCS). En su escrito, alegaron que MCCS interfirió torticeramente en la relación contractual entre HCCS y el DS, y que ello produjo el incumplimiento de HCCS con el BPPR.
[12] Apéndice del recurso de *certiorari*, a las págs. 180-228.

Tras varios trámites procesales[13], el 6 de junio de 2013, el foro *a quo* dictó *Sentencia Sumaria y de Desestimación,* en la cual declaró *Ha Lugar* la demanda y, en consecuencia, ordenó el pago solidario entre ILA, el señor López Alejandro, la señora Carcase Moure y la SLG, a excepción de HCCS.[14] Además, decretó la venta en pública subasta del bien inmueble (Oficina) en ejecución de las hipotecas inscritas que lo gravaron, de no realizarse el pago. A su vez, desestimó la acción de ejecución de hipoteca en cuanto al Apartamento Núm. 9.

Más tarde, el 21 de enero de 2014, PR Asset Portfolio 2013-1 International Sub, LLC (PRAPI) como nueva parte demandante, presentó *Moción en Solicitud de Anotación de Embargo en Ejecución de Sentencia.*[15] En su escrito alegó que interesaba ejecutar la sentencia antes mencionada en el Apartamento Núm. 9 para abonar sumas adicionales a su sentencia, de conformidad con la Regla 56.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.1. En cumplimiento con una orden del TPI, PRAPI presentó estudio de título referente al bien inmueble concernido.[16]

Así, el foro primario ordenó la expedición de un mandamiento dirigido al Registrador de la Propiedad de Humacao para que anotara el embargo por la cantidad de $500,000.00 sobre el Apartamento Núm. 9.[17]

De otra parte, el 9 de julio de 2015, el señor López Alejandro vendió a CE el bien inmueble en cuestión, y así lo hicieron constar

---

[13] Mediante moción, el BPPR solicitó sustitución de parte demandante a PR Asset Portfolio 2013-1 International Sub 1, LLC (PRAPI). *Véase,* Apéndice del recurso de *certiorari,* a las págs. 234-235.

[14] Apéndice del recurso de *certiorari,* a las págs. 236-238.

[15] *Íd.*, a las págs. 256-261.

[16] *Íd.*, a las págs. 275-276.

[17] *Íd.*, a las págs. 277-279. El mandamiento y orden del embargo fue presentado en el Registro de la Propiedad de Humacao, el 30 de julio de 2014. Además, el 6 de octubre de 2014, ordenó la venta y ejecución de sentencia en contra de la finca embargada (Apartamento Núm. 9). *Íd.*, a las págs. 298-300. No obstante, la subasta fue cancelada por la incomparecencia de la representación de la parte demandante. *Íd.*, a la pág. 307.

mediante *Escritura Número Dos sobre Compraventa.*[18] Las advertencias que surgen de dicho escrito indicaron que:

> Yo, la Notario, Doy Fe de haber hecho a los comparecientes las reservas y advertencias legales pertinentes, y muy especialmente les advertí lo siguiente:
>
> [...]
>
> (d) Que **no ha revisado personalmente los libros del Registro de la Propiedad a fin de determinar la existencia de cargas o gravámenes sobre el Inmueble** y/o condiciones restrictivas que pudiesen limitar el uso del Inmueble;
>
> (e) Que se ha obtenido una certificación registral negativa acreditando que la finca no está inscrita en el Registro de la Propiedad;
>
> (f) Que la expedición de la certificación no cierra el Registro y que, por tanto, no obstante la certificación negativa, pueden existir cargas inscritas con posterioridad a la certificación;
>
> (g) **La posibilidad de que otros documentos que afecten los derechos por la presente adquiridos y/o creados hayan sido presentados para inscripción con anterioridad al otorgamiento y/o a la presentación para su inscripción de una copia certificada de esta escritura en el Registro de la Propiedad y de la preferencia o superioridad** que dichas cargas, gravámenes y/o derechos puedan obtener por razón de contribuciones sobre la propiedad. (Énfasis Nuestro)[19]

Años después, el 16 de diciembre de 2021, PRAPI presentó una nueva solicitud de ejecución de sentencia, mediante la cual pidió la expedición de Mandamiento de Venta Judicial sobre el Apartamento Núm. 9.[20] El TPI ordenó la venta en pública subasta de la finca concernida y la Secretaría del Tribunal expidió el mandamiento correspondiente.[21]

Así las cosas, el 6 de septiembre de 2022, se tramitó un *Aviso de Subasta*, mediante el cual se hizo constar que la venta del Apartamento Núm. 9 se celebraría el 8 de noviembre de 2022. A su vez, dicho documento expuso que el embargo de la propiedad fue

---

[18] Apéndice del recurso de *certiorari*, a las págs. 458-462.

[19] *Íd.*, a las págs. 460-461. Luego de varios años, el 22 de agosto de 2022, el TPI declaró *Ha Lugar* la solicitud de sustitución de parte demandante, a saber, de PRAPI a South Side Capital, LLC (SSC). *Íd.*, a la pág. 361.

[20] Apéndice del recurso de *certiorari*, a las págs. 319-322.

[21] *Íd.*, a las págs. 323-327.

presentado el 30 de julio de 2014 y estaba anotado en Karibe, el 29 de diciembre de 2021.[22]

El 7 de noviembre de 2022, CE presentó *Moción Urgente sobre Solicitud de Paralización de Venta en Pública Subasta y sobre Nulidad de Embargo y Ejecución de Sentencia.*[23] Alegó falta de notificación como titular del apartamento concernido. Además, argumentó falta de partes indispensables en el pleito, toda vez que el señor López Alejandro falleció el 1 de agosto de 2016, y su sucesión no fue incluida. Expuso que sin dichas partes no procedía la ejecución de la sentencia dictada.

Por su parte, el 18 de noviembre de 2022, South Side Capital, LLC (SSC) se opuso.[24] En su escrito, alegó que CE adquirió el Apartamento Núm. 9 con posterioridad a: i) la presentación de la demanda; ii) la anotación de la Demanda; iii) la Sentencia emitida, que condenó a la parte demandada al pago de las cuantías reclamadas en la *Demanda*; y iv) a la anotación del embargo de dicho inmueble. Argumentó que, de la escritura de compraventa, surgía que no se revisaron las constancias en el Registro de la Propiedad. Además, que si CE hubiera hecho la diligencia de revisar el Registro, se enteraba de la anotación de la demanda y del embargo en contra de la finca en cuestión.

Evaluadas ambas posturas, el 2 de diciembre de 2022, el TPI permitió la intervención de CE, pero denegó la solicitud de paralización de los procedimientos de ejecución del embargo en contra del Apartamento Núm. 9.[25]

El 30 de enero de 2023, CE presentó sin éxito una moción de reconsideración.[26] Insatisfecha aun, acudió ante nos mediante el recurso de *certiorari* de epígrafe y una moción en auxilio de

---

[22] *Íd.*, a las págs. 365-368.
[23] *Íd.*, a las págs. 455-457.
[24] *Íd.*, a las págs. 466-473.
[25] *Íd.*, a las págs. 1-2. Esta resolución fue notificada a CE, el 17 de enero de 2023.
[26] Apéndice del recurso de *certiorari*, a las págs. 3-4.

jurisdicción para paralizar los procedimientos del presente caso. El 21 de marzo de 2023, emitimos *Resolución* mediante la cual declaramos *Ha* Lugar dicha moción y se concedió plazo a SSC para presentar su oposición.

En su recurso de *certiorari,* CE imputó al foro primario los siguientes señalamientos de error:

> Erró el TPI al declarar No Ha Lugar la solicitud de paralización y sobre nulidad de embargo y ejecución de sentencia por haber sido desestimada la causa de acción sobre el bien inmueble embargado.

> Erró el TPI al no paralizar la ejecución de sentencia por falta de partes indispensables.

> Erró el TPI al declarar No Ha Lugar la solicitud de paralización y sobre nulidad de embargo y ejecución de sentencia a pesar de que el bien inmueble objeto de la presente causa de acción no constaba inscrito por defectos de título y caducidad al momento de la anotación del embargo.

El 4 de abril de 2023, SSC fijó su posición en cuanto al recurso de *certiorari* presentado por CE. Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León Corp. v. Am. Int'l In. Co.*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León Corp. v. Am. Int'l Ins. Co.*, supra, a la pág.

174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, a la pág. 337. Dicha Regla dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones:

> "cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 [de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57,] o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra.*

No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia:

> "cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia." *Íd.*

Al denegar la expedición de un recurso de *certiorari* en estos últimos casos, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que "el Tribunal de Apelaciones no tiene que fundamentar su decisión." *Íd.*

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

### B.

Sabido es que en nuestro ordenamiento jurídico inmobiliario está reconocido el principio de la fe pública registral. *Medina y otros v. Medina Garay*, 170 DPR 135, 142 (2007). Como norma general, la inscripción de los derechos reales sobre inmuebles es declarativa, toda vez que estos se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del Registro de la Propiedad. Luis Rafael Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra Edición, Jurídica Editores, 2012, a la pág. 42. Es decir, no siempre coincide la realidad registral con la realidad extrarregistral. *Vázquez v. Administración de Reglamentos y Permisos*, 128 DPR 513, 532 (1991).

Así, nuestro derecho registral está fundamentado en la presunción de que las inscripciones en el Registro de la Propiedad son correctas y ciertas. *Medina y otros v. Medina Garay*, supra, a la pág. 143. Ello para salvaguardar la certeza del tráfico económico inmobiliario y lograr mediante la publicidad ante terceros de aquellos derechos que constan inscritos en el propio Registro. *López García v. López García*, 200 DPR 50,67 (2018); *Distribuidores Gas PR v. Registradora*, 188 DPR 351, 359 (2013). En cuanto a los títulos

inscritos, el Art. 53 de la Ley Núm. 198 de 8 de agosto de 1979, conocida como *Ley Hipotecaria y del Registro de la Propiedad*[27] (Ley Núm. 198), establece que surtirán efecto sobre terceros en la fecha de su inscripción. Particularmente, dispone que **"[s]e considerará como fecha de inscripción, para todos los efectos que esta deba producir, aun para determinar el plazo necesario para la cancelación de asientos, la fecha de la presentación** que deberá constar en la inscripción misma".[28] (Énfasis nuestro).

## C.

De otra parte, el Art. 112 de la Ley Núm. 198, *supra,* pormenoriza las personas que pueden solicitar la anotación preventiva de sus respectivos derechos en el Registro de la Propiedad, éstas son:

> 1ro. El que reclamare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos registrables.
>
> 2do. El que con arreglo a derecho obtuviere a su favor mandamiento de embargo, sobre bienes inmuebles del deudor.
>
> […][29]

El Tribunal Supremo ha resuelto que la anotación preventiva de embargo produce una afección de los terceros adquirentes o titulares de derechos reales sobre el bien embargado, **siempre que tengan una fecha posterior a la anotación**. (Énfasis Nuestro) *Nieves Díaz v. González Massas,* 178 DPR 820, 842 (2010). Mientras que, quedan inmunes, si sus títulos son de fecha anterior, aunque se inscriban con posterioridad a la anotación. *Íd.,* citando a L. Díez-

---

[27] 30 LPRA sec. 2256. Esta legislación es aplicable a los hechos del presente caso, toda vez que ocurrieron con anterioridad a la aprobación de la Ley Núm. 210-2015, según enmendada, conocida como *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* 30 LPRA sec. 6001 *et seq.*
[28] *Íd.*
[29] 30 LPRA sec. 2401.

Picaso y A. Gullón, *Sistema de Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. III, págs. 331-332.

### III.

En esencia, la parte interventora-peticionaria nos solicita que revisemos la *Resolución* recurrida, en la cual el TPI declaró *No Ha Lugar* la solicitud de paralización sobre nulidad de embargo y ejecución de sentencia presentada por ésta. En su recurso, alega que el foro primario erró al denegar dicha solicitud, toda vez que fue desestimada la causa de acción sobre el bien inmueble embargado. A su vez, argumenta que el foro *a quo* incidió al permitir el procedimiento de ejecución de sentencia sin la comparecencia de la sucesión del señor López Alejandro. Expone que estos herederos son partes indispensables. Por último, imputa error al foro judicial recurrido por rechazar la paralización de los procedimientos, toda vez que el aludido apartamento carecía de inscripción por defectos de título y caducidad al momento de la anotación del embargo.

Tras un ponderado examen del récord ante nos, las alegaciones de las partes y el derecho aplicable, forzoso es colegir que CE adquirió la propiedad inmueble concernida en una fecha posterior a la anotación del embargo. En específico, la anotación preventiva de dicho mecanismo fue presentada en el Registro, mediante Mandamiento, el 27 de marzo de 2014 y anotada en Karibe, el 29 de diciembre de 2021.[30] Mientras que, CE adquirió la aludida finca mediante escritura de compraventa con fecha de 9 de julio de 2015, la cual fue presentada en el Registro el 19 de julio de 2021.

Según pormenorizamos, el Art. 53 de la Ley Núm. 198, *supra*, establece que la inscripción de un documento en el Registro de la Propiedad se retrotrae al momento de la presentación. Por lo tanto, la fecha de inscripción de un escrito en el Registro de la Propiedad

---

[30] Apéndice del recurso de *certiorari*, a la pág. 492.

es la misma de la presentación. Por ello, la anotación de embargo es efectiva contra la parte interventora-peticionaria, toda vez que su título adquirido sobre el Apartamento Núm. 9 es posterior a la anotación del embargo.

De otro lado, a poco examinar el expediente nos percatamos que el presente caso está en su etapa post sentencia. Por tal razón, no nos convence el argumento de CE en cuanto a la falta de partes indispensables porque la sentencia que se pretende ejecutar fue adjudicada cuando el señor López Alejandro estaba vivo.

En suma, al considerar todos los criterios establecidos en nuestra Regla 40, *supra*, y los planteamientos de la parte interventora-peticionaria, debemos determinar, en nuestro ejercicio discrecional, denegar el auto de *certiorari* solicitado. El TPI no fue arbitrario, ni abusó de su discreción al ordenar la ejecución de sentencia en este caso, la cual es final y firme, mediante el mecanismo del embargo.[31]

**IV.**

Por los fundamentos antes expuestos, se *deniega* la expedición del recurso de *Certiorari*, presentado por CE, de conformidad con la Regla 40 del Tribunal de Apelaciones, *supra*.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[31] Cabe señalar que la anotación de embargo proviene de una ejecución de sentencia que advino final y firme, la cual se hizo para asegurar el crédito de un acreedor del titular del bien inscrito. *Nieves Díaz v. González Massas*, supra, a la pág. 842.  Esta acción no se relaciona con la desestimación de la ejecución de hipoteca en contra de dicho bien inmueble.