Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| BEATRIZ VEGA GUTIÉRREZ<br><br>Recurrida<br><br>v.<br><br>FHCHS OF PUERTO RICO, INC. H/N/C FIRST HEALTH CARE OF PUERTO RICO<br><br>Peticionaria | KLCE202401080 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2019CV02361<br><br>Sobre:<br>Despido Injustificado y Represalias |
|---|---|---|

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 11 de diciembre de 2024.

El 7 de octubre de 2024, FHCHS of Puerto Rico (en adelante, FHC o el peticionario) acudió ante este Tribunal de Apelaciones mediante una *Petición de Certiorari*. En esta, nos solicitó la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala de Bayamón (en adelante, TPI o foro primario) con fecha de 4 de septiembre de 2024 y notificada el día siguiente. Por virtud del aludido dictamen, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115,* presentada por el peticionario.

Estudiado el expediente y sopesados los argumentos de las partes, **denegamos** expedir el auto solicitado.

-I-

El 7 de mayo de 2019, la señora Beatriz Vega Gutiérrez (en adelante, señora Vega o la recurrida) presentó una *Demanda* sobre despido injustificado y represalias en contra de FHC y otros. En dicha *Demanda*, alegó que, el 1 de diciembre de 2013, fue contratada por FHC para trabajar

Número Identificador

RES2024 _____

como directora del departamento de farmacia por tiempo indeterminado. Adujo que, mientras ejerció el cargo de directora, la Sra. Clara I. Bou (en adelante, la señora Bou)[1] realizó actos que entorpecían el trabajo de la señora Vega. De igual forma, arguyó que la señora Bou exhibía comportamiento y actitudes impropias hacia los empleados. Señaló que, en una ocasión reportó a la señora Bou a la gerente de recursos humanos por maltratar a un empleado. No obstante, indicó que recursos humanos intentó disuadir a la recurrida de reportar el incidente.

Así las cosas, esbozó que, el 22 de junio de 2018, la señora Bou preparó una carta relacionada a un incidente con un empleado bajo la supervisión de la recurrida. Ante esto, la señora Bou le indicó que iba a realizar una auditoria únicamente al departamento de farmacia y, de no mantener la confidencialidad, conllevaría acciones disciplinarias, incluyendo el despido. La señora Vega expresó que se negó a firmar la carta dado que su jefa estaba de vacaciones y necesitaba consultarlo con ella. Esbozó, que esto causó una reacción violenta en la señora Bou, quien dio un golpe encima de la carta, mientras le gritaba a la recurrida. Por estos hechos, acudió personalmente a la oficina de recursos humanos para presentar una querella en contra de la señora Bou.

Por consiguiente, al pasar los días sin recibir comunicación alguna relacionada a la querella, el 10 de julio de 2018, acudió nuevamente a la oficina de recursos humanos para indagar sobre el estatus de su querella. A lo cual, le respondieron que se habían comunicado con la señora Bou. La recurrida explicó, que luego de haber notificado la querella en contra de la señora Bou, esta llevó a cabo una auditoría al departamento de farmacia por primera vez en cinco (5) años. Ello con el propósito de buscar una excusa para justificar el despido de la recurrida. Además, planteó que la señora

---

[1] La recurrida alegó que la señora Bou es la Oficial de Cumplimiento de FHC y estuvo a cargo del área de farmacia antes de que FHC reclutara a la señora Vega.

Bou le reportó a MCS (Medical Card System) que la señora Vega y su empleado, habían cometido incumplimiento, lo cual era falso. Sostuvo que la auditoría reveló que el departamento a cargo de la señora Bou, estaba en incumplimiento. Añadió que, ningún otro departamento de FHC fue auditado a pesar de que la recurrida así lo solicitó al departamento de recursos humanos y a su supervisora, la Lcda. Broco. Esto, así pues, era de conocimiento general que los mismos no cumplían con los requisitos que la señora Bou pretendía implementar.

Por lo anterior, esgrimió que, el 28 de septiembre de 2018, fue despedida de forma injusta y en represalias como resultado a la querella presentada en contra de la señora Bou. Alegó que, las razones para su despido eran falsas y fabricadas, únicamente, con el propósito de encubrir las represalias en contra de la señora Vega. Por lo cual, instó una reclamación bajo la Ley Núm. 80 del 30 de mayo de 1976, según enmendada intitulada *Ley Sobre Despidos Injustificados*, (Ley Núm. 80 de 1976) y otra bajo la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio Ante un Foro Legislativo, Administrativo o Judicial* (en adelante, Ley Núm. 115 de 1991).

En respuesta, el 21 de junio de 2019, la FHC presentó su *Contestación a la Demanda*. En esta, negó la mayoría las alegaciones de la *Demanda*. Como defensas afirmativas, alegó que el despido de la recurrida estuvo justificado. Sostuvo que el despido fue el resultado de una investigación la cual reveló, que la recurrida y su subordinado incurrieron en violaciones a los procesos de protección privada de pacientes. Además, alegó que la auditoría del departamento no ocurrió a consecuencia de queja alguna y, que la señora Bou no reportó a la recurrida ante persona o entidad alguna. A su vez, esbozó que, al momento del despido, la señora Vega intentó

borrar documentos de FHC que se encontraban en la computadora de la compañía.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 17 de diciembre de 2021, el peticionario presentó su *Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115*. Mediante esta, enumeró cincuenta (50) hechos que, a su juicio, no estaban en controversia. Así pues, indicó que la única controversia que restaba por atender era si la recurrida cumplió con el peso de probar que FHC tomó represalias contra esta por haber presentado una queja interna en el año 2018, en violación a la Ley Núm. 115 de 1991. A su vez, enfatizó que la recurrida no logró establecer que su despido fue resultado de represalias en su contra. Por el contrario, aclaró que el despido de la señora Vega surgió como resultado de la investigación que realizó FHC, mediante la cual concluyó que la recurrida falló en su rol como supervisora de un subordinado, quien también fue despedido. Además, esgrimió que dicha investigación reveló que esta incurrió en violaciones crasas a los procesos de protección de información privada de pacientes al programa llamado *Medication Reconciliation Program* (MRP)[2], establecido por MCS. Por último, añadió que los hechos incontrovertidos demostraban que la señora Vega carecía de evidencia para probar una causa de acción por una reclamación bajo la Ley Núm. 115 de 1991. Por todo lo anterior, solicitó al foro primario que desestimara la reclamación de manera sumaria, al amparo de la Ley Núm. 115 de 1991.

Por su parte, el 25 de febrero de 2022, la señora Vega presentó su *Oposición a Moción de Sentencia Sumaria Parcial con la Presentación de Hechos Adicionales Materiales y Pertinentes a la Reclamación de Represalias de la Parte Demandante*. En esencia, desglosó los hechos medulares que, a su juicio,

---

[2] Este programa requería comunicarse con el beneficiario luego del alta de una hospitalización para reconciliar los medicamentos recetados previo a la hospitalización y, aquellos en el momento del alta para evitar terapias duplicadas.

estaban en controversia y los que no. Además, expresó que las alegaciones ofrecidas por FHC para justificar su despido eran falsas y presentadas a los fines de ocultar el ánimo represivo en su contra. De igual forma, expuso que los informes de cumplimiento reflejaban que la recurrida nunca estuvo en incumplimiento. Por último, apuntó que el mecanismo de sentencia sumaria no era el apropiado para atender la controversia ante nos, toda vez que, existían elementos subjetivos de intención y credibilidad, los cuales eran esenciales para la adjudicación de la causa de acción por represalias y despido injustificado.

Posteriormente, el 1de abril de 2022, FHC presentó su *Réplica a Oposición a Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115,* en la cual reiteró sus planteamientos iniciales. En esencia, argumentó que la señora Vega no controvirtió los hechos propuestos en la moción de sentencia sumaria parcial, por lo que estos fueron admitidos por esta. Sostuvo que los argumentos incluidos en la oposición a la sentencia sumaria eran insuficientes para crear una controversia real de un hecho material y, estaban plagados de especulaciones, conjeturas, aseveraciones conclusorias y supuestos que no estaban sustentados en los documentos presentados.  En virtud de lo anterior, razonó que procedía desestimar sumariamente la reclamación al amparo de la Ley Núm. 115 de 1991.

Así las cosas, el 6 de mayo de 2022, la señora Vega presentó su *Dúplica a Réplica a la Oposición a Moción de Sentencia Sumaria Parcial* en la cual reafirmó sus alegaciones iniciales. Planteó, que los documentos presentados demostraban la existencia de controversia real y sustancial de hechos con relación a la motivación del despido de la recurrida. Por lo tanto, razonó que procedía celebrar un juicio en su fondo.

Luego de examinar los argumentos presentados por las partes, el 4 de septiembre de 2024, el TPI emitió su *Sentencia Parcial*, que se notificó al

día siguiente. Mediante esta, declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115*, presentada por FHC el 17 de diciembre de 2021. Además, formuló cuarenta y dos (42) determinaciones de hechos que no estaban en controversia. No obstante, señaló que existía controversia de hechos sobre lo siguiente:

1. Si para el libreto provisto por MCS a FHCHS con relación a las llamadas a los beneficiarios, es de suma importancia validar la identidad de la persona con la cual se estaba hablando.

2. Si de conformidad con la política PHA004 -luego de terminar la llamada al beneficiario- el enfermero Christian Javier o la farmacéutica Beatriz Vega eran responsables de completar el formulario MRP, en el cual se documentaban los pasos tomados en la reconciliación de medicamentos. Si la persona que completa este documento certifica que toda la información documentada es verdadera, completa y certera, basada en una evaluación médica cara a cara realizada al paciente.

3. Si el enfermero Christian Javier (o la farmacéutica Beatriz Vega) tenían también que registrar la llamada con el beneficiario y lo discutido en la misma, en el sistema de HealthSuite.

4. Si a raíz de la queja presentada por el beneficiario sobre la llamada del enfermero Christian Javier el 22 de junio de 2018, la Sra. Bou procedió a escuchar la llamada entre Christian Javier y el beneficiario, además de revisar la documentación relacionada con la llamada hecha por el enfermero.

5. Si al escuchar la llamada, la Sra. Bou descubrió que Christian Javier había realizado una primera llamada al beneficiario y con quien habló fue con la hija. Si el enfermero Christian Javier documentó en el formulario MRP que había hablado con el beneficiario y que había llevado a cabo la reconciliación de los medicamentos.

6. Si durante su empleo en FHCHS, la demandante firmó varios acuerdos de confidencialidad que tenían un lenguaje similar sobre acciones disciplinarias que se tomarían, si ocurría una violación de confidencialidad.

7. Si mientras que la demandante Beatriz Vega fue a presentar una querella en el Dpto. de Recursos Humanos en contra de la Sra. Bou, relacionada al asunto del documento de confidencialidad, esta última continuó con su investigación, sobre las llamadas durante el período del 1 de junio al 6 de julio de 2018.

8. Si de la auditoría que la Sra. Bou hizo de las llamadas del período del 1 de junio al 6 de julio de 2018, surgieron una serie de hallazgos, incluyendo que éste no estaba cumpliendo con los requisitos de identificación de la persona con quien habló, así como que había documentado en los formularios MRP y en Healthsuite que había realizado el proceso de reconciliación de medicamentos, sin haberlo hecho.

9. Si la Sra. Broco estuvo de acuerdo con dicha recomendación de MCS y tomó la decisión de despedirlo, pues entendía que las violaciones de MRP en las que incurrió Javier eran de

naturaleza grave, ponían en riesgo la relación de FHCHS con su cliente principal, MCS y exponían a FHCHS a potenciales señalamientos de la agencia federal CMS de violaciones a las leyes y reglamentos de Medicare que implementa dicha agencia.

10. Si luego del despido del enfermero Christian Javier, MCS continuó el proceso de escuchar llamadas del proceso de MRP de FHCHS.

11. Si subsiguientemente, el Sr. Alexis Lebrón de MCS, le informó a la Sra. Bou que se había concluido que la demandante estaba incurriendo en las mismas faltas que el enfermero Christian Javier, de no identificar correctamente a los asegurados.

12. Si a base de dicha información, la Sra. Bou escuchó las llamadas llevadas a cabo por Beatriz Vega, y además verificó los formularios de MRP sometidos por ésta que acompañaban a las llamadas y la correspondiente información en Healthsuite y validó que, en efecto, la demandante incurrió en los mismos tipos de violaciones que el enfermero Christian Javier, no solo en cuanto a la identificación de las personas con quienes hablaba, según identificado por MCS, sino también al documentar que había llevado a cabo el proceso de reconciliación de medicamentos, según exigido por las políticas de FHCHS que Beatriz Vega misma implementó, cuando de las grabaciones surgía que no lo llevó a cabo.

13. Si es cierto que ninguna queja presentada por la demandante Beatriz Vega jugó rol alguno en la determinación de la Sra. Broco, principal ejecutiva de FHCHS, en despedir a la demandante, sino que fue, exclusivamente, el resultado de la auditoría interna hecha por el Departamento de Cumplimiento de FHCHS y la llevada a cabo por MCS.

En vista de las determinaciones de hechos formuladas, el TPI determinó que no procedía resolver la controversia mediante el mecanismo de sentencia sumaria. Indicó, que existían hechos medulares en controversia relacionados a presuntas acciones adversas en contra de la señora Vega por parte del patrono, las cuales culminaron en el despido de esta. Por lo tanto, concluyó que el caso de epígrafe ameritaba la celebración de un juicio plenario, para dilucidar las controversias previamente expuestas y, que el Tribunal tuviera ante sí la verdad de los hechos. Así pues, no acogió la *Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115*.

Inconforme, el 7 de octubre de 2024, FHC instó el recurso de epígrafe. Particularmente, señaló que el foro primario cometió los siguientes errores:

Erró el TPI al denegar la moción de sentencia sumaria parcial de FHC y no desestimar la reclamación por represalias al amparo de la Ley 115.

Erró el TPI al denegar la moción de sentencia sumaria parcial de FHC y determinar que había hechos en controversia.

Atendido el recurso, el 24 de octubre de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 15 de noviembre de 2024 para comparecer y exponer su posición. En cumplimiento con esto, el 15 de noviembre de 2024, la recurrida presentó su *Oposición a Expedición de Petición de Certiorari*.

Con el beneficio de la comparecencia de todas las partes, damos por sometido el asunto y procedemos a resolver.

## II.

### -A-

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 195 (2023) al citar a McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de certiorari descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Rivera et al. v. Arcos Dorados

et al., *supra,* a la pág. 207-208.  La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. 800 Ponce de León v. AIG, 205 DPR 163 (2020).  Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019).  La delimitación que imponen estas

disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. De Caguas v. JRO Construction, *supra*.

III.

Por virtud del recurso de epígrafe, FHC impugna la *Sentencia Parcial* emitida por el TPI el 4 de septiembre de 2024 y notificada el día siguiente, en la cual declaró No Ha Lugar la *Moción de Sentencia Sumaria Parcial en Torno a Reclamación de Represalias Bajo la Ley 115*. Específicamente, el peticionario reclama ante nos que el foro primario erró al denegar la moción de sentencia sumaria parcial de FHC y no desestimar la reclamación por represalias al amparo de la Ley Núm. 115 de 1991.  A su vez, argumenta que el TPI incidió al determinar que existía controversia de hechos respecto a la causa de acción por represalias.

Recurriéndose pues de la denegatoria de una moción de carácter dispositivo, estamos facultados, conforme a los dispuesto en la Regla 52.1 de Procedimiento Civil, supra, para revisar esta determinación mediante un recurso de *Certiorari*. Ahora bien, examinado el legajo apelativo, las alegaciones específicas incluidas en la *Demanda* y las mociones de sentencia sumaria, no vemos que el TPI haya errado en su proceder. A su vez, no identificamos presente alguno de aquellos factores enunciados en la Regla 40 de nuestro Reglamento para determinar la expedición del auto discrecional del *certiorari*. No nos parece que la decisión recurrida sea contraria a derecho, ni que en esta haya mediado prejuicio, parcialidad por parte del TPI, que la expedición del auto evite el fracaso a la justicia, o cualquiera de los otros elementos mencionados por la Regla 40. Al ser ello así, merece nuestro respeto.

Es menester señalar que la denegatoria del recurso discrecional de *certiorari* no prejuzga los méritos de la controversia que en este se plantea.

Entiéndase pues, que cuando se deniega un auto de *certiorari* no se resuelve implícitamente cuestión alguna contra la parte promovente de este, a los efectos de cosa juzgada. La resolución denegatoria simplemente es índice de la facultad discrecional del Tribunal para negarse a revisar, en determinado momento, una decisión emitida por un tribunal de instancia. Siendo ello así, estas controversias pudieran ser reproducidas nuevamente mediante el correspondiente recurso de apelación. *Véase*, Pueblo v. Cardona López, 196 DPR 513 (2016).; García v. Padró, 165 DPR 324 (2005).; Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755-756 (1992).

IV.

Por todo lo antes consignado, **denegamos** expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones