Zoraida García Morales y otros, demandantes y recurridos, *v.* Iván Padró Hernández y otros, demandados y peticionarios.

*Número:* CC-2004-1063     *Resuelto:* 14 de julio de 2005

*Alinda Sandoval Matos,* abogada de la parte peticionaria; *Joaquín Peña Peña* y *Allan A. Peña Ríos,* abogados de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

Con motivo de una muerte ocasionada por un accidente, ocurrido entre dos vehículos de motor en el Km. 11.6 de la Carretera Estatal Núm. 22, el 4 de octubre de 1996 Zoraida García Morales —por sí y en representación de sus hijos menores de edad M.J.A. y J.A.E.G.— Esthefanny Pauline Caraballo García y Helen Peña Esteves[1] presentaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda de daños y perjuicios contra Iván R. Padró Hernández, Efraín Benítez Morales, el Se-

---

[1] Los codemandantes recurridos son la esposa, los hijos, la hija de crianza y la madre del occiso, respectivamente.

cretario del Departamento de Transportación y Obras Públicas, la Autoridad de Carreteras y Transportación (Autoridad de Carreteras), General Accident Insurance Company y la Compañía de Seguros X.[2]

En la referida demanda se alegó, en síntesis, que el 1 de mayo de 1996, mientras Iván Esteves Peña transitaba[3] a velocidad moderada en horas de la mañana por la Carretera Núm. 22, se encontró de súbito —al llegar al Km. 11.6 en el sector Cataño— con una máquina barredora[4] propiedad de la Autoridad de Carreteras, produciéndose un fatal impacto entre ambos. Se adujo que la barredora de la Autoridad de Carreteras no tenía señal alguna —conforme a los requisitos mínimos establecidos para identificar dicha función— que advirtiese al público que se estaban llevando a cabo labores de limpieza o reparación de la carretera; alegaron, además, que esta negligencia de la Autoridad de Carreteras y de sus empleados al no tomar las medidas de seguridad necesarias —exigidas por las mejores normas de diligencia y la ley— fue lo que provocó el accidente y, en consecuencia, la muerte de Iván Esteves Peña.[5]

Luego de varios trámites e incidentes procesales, el 14 de octubre de 1999 la parte demandante enmendó su demanda[6] y presentó, a su vez, una Moción de Desistimiento sin Perjuicio, en relación con Padró Hernández y

---

[2] Alguna de estas últimas codemandadas tenía una póliza de seguros expedida a favor de la Autoridad de Carreteras y Transportación (Autoridad de Carreteras) para cubrir daños como los que se alegaban en la demanda.

[3] Al momento del accidente, Esteves Peña conducía un Ford Van, modelo Econoline, tablilla 361–957, propiedad de Federal Express, Corp.

[4] La barredora de la Autoridad de Carreteras —conducida al momento de los hechos por Padró Hernández— era un camión Ford 1992, modelo 7000, tablilla 461–138.

[5] En virtud de lo anterior, los codemandantes solicitaron que los codemandados pagaran solidariamente la suma de $2,400,000 como pago, entre otras cosas, de los sufrimientos experimentados por el occiso a causa del terrible dolor que sintió luego del accidente y antes de morir, los ingresos dejados de percibir por el occiso, los daños sufridos por su madre por la pérdida de su único hijo, y la falta de afecto y compañía.

[6] La demanda se enmendó para sustituir a Helen Peña Esteves —por haber fallecido— por sus herederos M.J.A.G. y J.A.E.G. El foro primario concedió la referida solicitud.

Benítez Morales. Mediante sentencia a esos efectos, el foro primario declaró "con lugar" la referida moción.

Posteriormente, el foro de instancia —a solicitud de ambas partes—[7] ordenó la bifurcación del caso. Conforme a lo anterior, el Tribunal de Primera Instancia señaló una *vista únicamente para determinar si la Autoridad de Carreteras incurrió en negligencia en la gestión de limpieza de la autopista que se realizaba con la barredora el día del accidente objeto del pleito.*

Celebradas las correspondientes vistas,[8] y luego de que las partes sometieran sendos proyectos de sentencia, el tribunal de instancia emitió un dictamen mediante el cual dispuso finalmente del aspecto de negligencia del caso.[9] A esos efectos, resolvió que —a la luz de la evidencia documental y testifical recibida— el camión barredora no estaba equipado con los aditamentos de aviso y seguridad adecuados y necesarios para llevar a cabo una operación de limpieza de carriles en una avenida de gran magnitud y densidad de tránsito, como lo es la Carretera Núm. 22. Determinó que la Autoridad de Carreteras no tenía señales efectivas para alertar a los conductores del peligro existente en la carretera, ya que el reflejo solar disminuía en gran medida la efectividad del biombo que tenía colocado. En virtud de lo anterior, concluyó que la Autoridad de Carreteras fue negligente —debido a su conducta y omisio-

---

[7] Las partes acordaron que sería conveniente celebrar unas vistas separadas para que *el Tribunal de Primera Instancia determinara a través de la prueba la negligencia, si alguna, de las partes involucradas en el accidente con el propósito de mover a una posible transacción.* Luego, si fuera necesario y no se llegara a un acuerdo, se procedería entonces con otra vista para desfilar la evidencia relacionada con los daños alegados por la reclamante.

[8] Las vistas sobre negligencia se celebraron los días 23 de febrero de 2000; 16–24 de octubre de 2000; 22, 24, 25 y 28 de enero de 2002; 22–24 de enero de 2003; 17, 19, 21, 24 de marzo de 2003, y 7 y 8 de julio de 2003.

[9] El dictamen fue titulado Relación del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia sobre la Negligencia. Éste fue emitido el 10 de mayo de 2004 y notificado el 14 de junio de 2004. Vale la pena destacar que el volante de notificación utilizado fue el reservado para la notificación de sentencias, mediante el cual se apercibe a las partes sobre el derecho a instar un recurso de apelación.

nes— y su negligencia fue la *única causa* del accidente que ocasionó la muerte de Esteves García.

Insatisfecha con tal determinación, el 13 de septiembre de 2004 la Autoridad de Carreteras acudió, vía recurso de apelación, ante el Tribunal de Apelaciones. Alegó como único señalamiento de error que había incidido el foro primario en su evaluación de la prueba presentada en la vista de negligencia al concluir que el accidente de tránsito se debió única y exclusivamente a la negligencia de la Autoridad de Carreteras.[10]

Acogido el recurso como un *certiorari*, por tratarse de una resolución de naturaleza interlocutoria, el 30 de septiembre de 2004 el foro apelativo intermedio, mediante resolución a esos efectos y sin discutir el error planteado, *denegó* el auto solicitado. Fundamentó su determinación en que de acogerse el recurso se podría causar un fraccionamiento indebido del pleito y la dilación innecesaria para la adjudicación final sobre la cuantía de los daños. El tribunal apelativo intermedio, a esos efectos, expresó:

> … [t]ratándose de una resolución interlocutoria, la cual no puede ser apelada por no ser final y ejecutable, el peticionario … deberá esperar que se resuelva el aspecto de la cuantía de daños para poderla revisar. Nuestra intervención en esta etapa del proceso, como dispone la jurisprudencia, sería a destiempo pues de no probarse los daños por la parte demandante aquí recurrida, se convertiría en "ilusoria" la adjudicación [de] daños, ya sea por transacción o en los méritos, entonces la

---

[10] Se alegó, específicamente, que el accidente ocurrió debido, únicamente, a que Esteves conducía ilegalmente y a exceso de velocidad, se cambió del centro del carril al de la izquierda precipitadamente y sin examinar las condiciones del carril hacia el cual se dirigía, lo cual no reflejó un comportamiento prudente y razonable. Se alegó, además, que el conducir a exceso de velocidad fue lo que impidió que Esteves Peña tuviera el pleno dominio de su vehículo de manera que pudiera reaccionar a tiempo y evitar el accidente tan pronto se percata de la situación peligrosa en la cual expuso su seguridad y vida, así como la de los demás. Se adujo que, debido a ello, no logró frenar por completo su vehículo para impedir el choque ni regresar al carril del centro, ya que había alcanzado el vehículo que se encontraba al frente suyo en el carril del centro. En virtud de lo anterior, se indicó que ningún artefacto de advertencia hubiese sido efectivo para evitar el accidente. Por último, alegaron que las actuaciones de Esteves no podían ser previstas por la Autoridad de Carreteras, y que por tal razón no podía imponérsele responsabilidad ya que únicamente respondía si hubiese violado el deber de previsibilidad conforme al Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

sentencia emitida por el tribunal de instancia será final, eje-
cutable y apelable. Apéndice, pág. 761.

Inconforme con tal determinación, el 15 de noviembre
de 2004 la parte demandada recurrió oportunamente ante
este Tribunal —vía *certiorari*— imputándole al foro apela-
tivo intermedio, en síntesis y en lo pertinente, haber
errado al denegar el recurso de *certiorari* presentado por el
fundamento de que, intervenir en esta etapa de los proce-
dimientos, dilataría innecesariamente la resolución final
del pleito.

Atendida la petición de *certiorari*, le concedimos veinte
días a la parte demandante recurrida para mostrar causa
por la cual este Tribunal no debía expedir el auto solicitado
y dictar sentencia revocatoria de la resolución emitida por
el Tribunal de Apelaciones. Contando con la comparecencia
de las partes y estando en condiciones de resolver el re-
curso, procedemos a hacerlo. *Revocamos*; veamos por qué.

## I

Como es sabido, la Regla 43.1 de Procedimiento
Civil, 32 L.P.R.A. Ap. III,[11] define el término "sentencia"
como "cualquier determinación del tribunal que resuelva
finalmente la cuestión litigiosa". *U.S. Fire Ins. v. A.E.E.*,
151 D.P.R. 962, 967 (2000). Véanse: *Román v. K-mart
Corp.*, 151 D.P.R. 731, 739 (2000); *Feliberty v. Soc. de Ga-
nanciales*, 147 D.P.R. 834, 838 (1999); *De Jesús v. Corp.
Azucarera de P.R.*, 145 D.P.R. 899, 903 (1998). Es decir, es

---

[11] La Regla 43.1 (32 L.P.R.A. Ap. III) dispone lo siguiente:

"Según se usa en estas reglas, el término 'sentencia' incluye cualquier determi-
nación del Tribunal de Primera Instancia que resuelva finalmente la cuestión liti-
giosa de la cual pueda apelarse.

"El término 'sentencia', cuando es dictada por un tribunal de apelación, se re-
fiere a la determinación final de ese tribunal en cuanto a la apelación ante sí o en
cuanto al recurso discrecional en el cual el tribunal de apelación ha expedido el auto
solicitado. La determinación final del tribunal de apelación cuando éste deniega dis-
crecionalmente el auto solicitado se denomina 'resolución'. La determinación final
del tribunal de apelación cuando éste desestima por cualquier causa o archiva por
desistimiento un recurso de apelación, se denomina 'sentencia'."

aquella determinación que "pone fin a la controversia existente entre las partes mediante una adjudicación final". *U.S. Fire Ins. v. A.E.E.*, ante, pág. 967. Véanse: *Román et al. v. K-mart Corp. et al.*, ante, pág. 739; *Rodríguez v. Tribl. Mpal.*, 74 D.P.R. 656, 664 (1953).

A tono con lo anterior, este Tribunal ha indicado que " '[u]na sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal que no queda pendiente nada más que la ejecución de la sentencia' ". *Feliberty v. Soc. de Gananciales*, ante, pág. 838, citando a *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642, 655 (1987). Véanse: *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20 (1986); *Cortés Román v. E.L.A.*, 106 D.P.R. 504, 509 (1977); *Dalmau v. Quiñones*, 78 D.P.R. 551, 556 (1955). Véanse, además: J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, pág. 680; H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 351.

Por otro lado, este Tribunal ha definido el término "resolución" como aquel dictamen que "pone fin a un incidente dentro del proceso judicial". *U.S. Fire Ins. v. A.E.E.*, ante, pág. 967. Véanse: *Román et al. v. K-mart Corp. et al.*, ante, pág. 739; *De Jesús v. Corp. Azucarera de P.R.*, ante, pág. 904; *Rodríguez v. Tribl. Mpal.*, ante, pág. 664. Véanse, además: Cuevas Segarra, *op. cit.*, pág. 682; Sánchez Martínez, *op. cit.*, pág. 351. Dicho de otra manera, la resolución es aquella "decisión en la cual se adjudica un incidente respecto al procedimiento o a los derechos y obligaciones de algún litigante o en cuanto a algún aspecto de la reclamación o reclamaciones que se dilucidan en el proceso, bien sea antes o ya sea después de dictarse la sentencia". Sánchez Martínez, *op. cit.*, pág. 351.

Conforme a lo anterior, este Tribunal ha indicado, respecto a la interrelación existente entre una resolución y una sentencia, que, específicamente, "[n]inguna de las dos constituyen un término genérico dentro del cual

pueda entenderse comprendida la otra". *U.S. Fire Ins. v. A.E.E.*, ante, pág. 967. Véanse: *De Jesús v. Corp. Azucarera de P.R.*, ante, pág. 904; *Rodríguez v. Tribl. Mpal.*, ante, pág. 664. De este modo, hemos reiterado que existe una "diferencia conceptual categórica" entre una sentencia y una resolución.[12] *U.S. Fire Ins. v. A.E.E.*, ante, pág. 967; *De Jesús v. Corp. Azucarera de P.R.*, ante, pág. 904; *Rodríguez v. Tribl. Mpal.*, ante, pág. 664.

En virtud de lo anterior, "[n]o es el nombre lo que determina si tal dictamen es una resolución o es una sentencia. Un dictamen judicial puede titularse sentencia y ser realmente una resolución y viceversa". (Énfasis suprimido.) Sánchez Martínez, *op. cit.*, págs. 351–352. A esos efectos, este Tribunal ha señalado que "si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, se constituye en una sentencia final de la cual puede interponerse recurso de apelación". *U.S. Fire Ins. v. A.E.E.*, ante, pág. 967. Véanse: *Román et al. v. K-mart Corp. et al.*, ante, pág. 739; *De Jesús v. Corp. Azucarera de P.R.*, ante, pág. 903. Véanse, además: Cuevas Segarra, *op. cit.*, págs. 679–680; Sánchez Martínez, *op. cit.*, págs. 351–352.

De igual forma, si el tribunal dicta una sentencia parcial que no cumple con los requisitos de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III,[13] la sen-

---

[12] Existe entre ambas además, una diferencia en la práctica seguida para la notificación. Cuando se trata de una resolución, el tribunal notifica a las partes sin advertirles de su derecho a apelación. Cuando se trata de una sentencia, el secretario le notifica a las partes sobre la adjudicación final, su derecho a apelar y la fecha exacta del archivo de dicha notificación en los autos, que es la que determina desde cuándo empieza a transcurrir el termino para apelar. *U.S. Fire Ins. v. A.E.E.*, 151 D.P.R. 962, 967 (2000); *De Jesús v. Corp. Azucarera de P.R.*, 145 D.P.R. 899, 904 (1998); *Rodríguez v. Tribl. Mpal.*, 74 D.P.R. 656, 664 (1953).

[13] La referida Regla 43.5 (32 L.P.R.A. Ap. III) establece el mecanismo procesal que tienen a su disposición los tribunales cuando en un pleito de múltiples reclamaciones o múltiples partes se dicta sentencia para adjudicar menos del total de las reclamaciones o de los derechos o las obligaciones de menos de la totalidad de las partes. Es decir, esta regla permite darle finalidad a una sentencia parcial que únicamente resuelva los derechos de una de las partes en un pleito. *U.S. Fire Ins. v. A.E.E.*, ante, pág. 968; *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20 (1986).

tencia dictada por no ser final no es apelable, sino que es una resolución que sólo puede ser revisada mediante un recurso de *certiorari.*

■ Específicamente, este Tribunal ha aclarado que cuando un tribunal bifurca una acción de daños y perjuicios, y fracciona los elementos básicos de negligencia y daños, aunque disponga del primer aspecto (la negligencia) no se resuelve de forma definitiva la cuestión litigiosa de la cual pueda apelarse. Por tal razón, el referido dictamen es "de carácter interlocutorio [que] no es final por no ser aún ejecutable". *U.S. Fire Ins. v. A.E.E.*, ante, pág. 968. Véase *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 301–302 (1987). En virtud de lo anterior, el dictamen relativo al aspecto de negligencia, por no ser final, no es apelable; es una resolución que sólo puede ser revisada mediante un recurso de *certiorari.*

## II

■ Por otra parte, el auto de *certiorari* es el vehículo procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. *Pueblo v. Colón Mendoza*, 149 D.P.R. 630, 637 (1999). Se trata de un recurso extraordinario en el que se solicita que este Tribunal ejerza su discreción para corregir un error cometido por el Tribunal de Primera Instancia. *Negrón v. Srio. de Justicia,* 154 D.P.R. 79 (2001). Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional. Es decir, descansa en la sana discreción del foro apelativo el expedir o no el auto solicitado. Véase Sánchez Martínez, *op. cit.*, pág. 560.

■ Específicamente, este Tribunal ha definido "discreción" como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990). Es decir, " '[d]iscreción es, pues, una forma de razonabilidad

aplicada al discernimiento judicial para llegar a una conclusión justiciera ...' ". (Énfasis suprimido.) *Pueblo v. Ortega Santiago*, ante, pág. 211, citando a *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964).

Sin embargo, la aludida discreción del foro apelativo no es absoluta, ya que como hemos indicado el mencionado concepto "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho porque, ciertamente, eso constituiría un abuso de discreción".[14] *Negrón v. Srio. de Justicia*, ante. Véanse: *Pueblo v. Ortega Santiago*, ante, pág. 211; *Pueblo v. Sánchez González*, ante, pág. 200. Esto es así, ya que "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". (Énfasis suprimido.) *Pueblo v. Ortega Santiago*, ante, pág. 211. Véase *Pueblo v. Sánchez González*, ante, pág. 200.

En virtud de lo anterior, y con el fin de que el Tribunal de Apelaciones pueda ejercer de forma sabia y prudente su facultad discrecional de atender o no los méritos de los asuntos que le son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento de ese Tribunal, 4 L.P.R.A. Ap. XXII-A, señala los criterios que debe tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[15] *Negrón v. Srio. de Justicia*, ante. La referida regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios

---

[14] Este Tribunal ha expresado que un tribunal de justicia incurre en abuso de discreción, entre otras y en lo pertinente, "cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos". *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211–212 (1990).

[15] Vale la pena destacar que ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-A, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva. H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

▮ Vale la pena destacar que la acción de un tribunal de apelaciones, *denegatoria* de un auto de *certiorari*, no prejuzga los méritos del asunto o la cuestión planteada, por lo cual puede ser reproducido nuevamente mediante el correspondiente recurso de apelación. *Núñez Borges v. Pauneto Rivera*, 130 D.P.R. 749, 755–756 (1992). En consecuencia, la parte afectada por la decisión que finalmente tome el Tribunal de Primera Instancia, no queda privada de la oportunidad de hacer ante el foro apelativo los planteamientos que entienda procedentes una vez se resuelva el pleito. Íd.

## III

La parte peticionaria alega que *incidió* el Tribunal de Apelaciones al denegar la expedición del recurso de *certiorari* en el presente caso por el fundamento de que intervenir en esa etapa de los procedimientos dilataría innecesariamente la resolución final del pleito. *Le asiste la razón*; veamos por qué.

En el presente caso se bifurcó el pleito de daños y perjuicios para que se adjudicara primeramente la negligencia

y luego los daños. *Luego de una vista de negligencia que se extendió por 19 días*, el foro primario determinó que la negligencia de la Autoridad de Carreteras fue la única causa del accidente que le ocasionó la muerte a Esteves Peña.

Inconforme con tal determinación, la Autoridad de Carreteras acudió, vía recurso de apelación, ante el Tribunal de Apelaciones. Correctamente dicho foro acogió el recurso de apelación como recurso de *certiorari*; esto en virtud de que, como mencionamos anteriormente, *se trata de la revisión de una resolución interlocutoria.*

Inexplicablemente, sin embargo, el foro apelativo intermedio se negó a expedir el auto. No hay duda de que dicho dictamen no podía ser apelado por no ser una sentencia final y ejecutable; sin embargo, esto no significa que dicho foro apelativo intermedio estuviese incapacitado para revisar dicha resolución mediante el auto de *certiorari.*

Sorprende que el foro apelativo intermedio considerara que entrar en los méritos del recurso equivaldría a un fraccionamiento indebido y a una dilación innecesaria para la adjudicación final sobre la cuantía de los daños, y que expedir el auto en esa etapa del proceso era incurrir en un acto a destiempo, pues de no probarse los daños por la parte demandante recurrida, se convertiría en "ilusoria" la adjudicación sobre negligencia que hizo el tribunal.

Resulta increíble que el foro apelativo intermedio concluyera que no debía expedir el auto —en un caso donde acuden al tribunal una viuda, una madre que perdió a su único hijo y unos niños que se quedaron sin padre— debido a que existe la posibilidad de que la parte demandante no pueda probar daños. *¿Puede concluirse que la muerte de un ser humano no le causa daño alguno a su esposa, a sus hijos y a su madre?*

Reconocemos que dicho foro tiene amplia discreción para determinar qué recurso expedir. *Sin embargo, enfatizamos que dicha discreción no es absoluta e ilimitada.* No hay duda que erró el Tribunal de Apelaciones al no expedir el auto solicitado ya que, contrario a lo resuelto, ese era el *momento más oportuno* para examinar la determinación

que sobre la negligencia hiciera el foro de instancia. *Dicha revisión promueve la economía procesal debido a que, tal vez, la disposición del recurso haría innecesaria la ulterior determinación de daños si el foro apelativo intermedio entendiera que la Autoridad de Carreteras no fue negligente, o podría promover, en última instancia, que las partes llegaran a un acuerdo transaccional, de confirmarse al foro de instancia sobre el aspecto de negligencia.*

Estamos convencidos, en fin, de que expedir el auto solicitado en el presente caso *no* causa un fraccionamiento indebido de éste, *no* se afecta el desarrollo normal del litigio *ni* se demora su pronta solución; *todo lo contrario.* Conforme a lo anterior, *resulta forzoso concluir que el foro apelativo intermedio abusó de su discreción al resolver de forma contraria a derecho y no sopesar los factores antes detallados.*

*Se dictará sentencia de conformidad.*

La Jueza Asociada Señora Fiol Matta concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino.