Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| ALEJANDRO DE LA MATA LIMARDO<br><br>Recurrido<br><br>v.<br><br>CAGUAX AUTO SALES, INC.<br><br>Peticionario<br><br><br>ORIENTAL BANK<br><br>Demandado-Parte con Interés | TA2025CE00289 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2020CV02440<br><br>Sobre: Sentencia Declaratoria; Daños y Perjuicios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# R E S O L U C I Ó N

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

Comparece el peticionario, Caguax Auto Sales, Inc., mediante un recurso de *Certiorari* y nos solicita que revoquemos la *Resolución* emitida y notificada el 18 de junio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante el referido dictamen, el TPI declaró No Ha Lugar la solicitud de sentencia sumaria presentada por el peticionario.

El 19 de agosto de 2025, emitimos una resolución mediante la cual le concedimos al recurrido, Alejandro de la Mata Limardo, un término para mostrar causa por la cual no debíamos expedir el auto de *certiorari* solicitado y revocar la *Resolución* recurrida.

El 26 de agosto de 2025, el recurrido presentó su *Oposición a Expedición de Certiorari.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

I.

El 18 de noviembre de 2020, Alejandro de la Mata Limardo (De la Mata o recurrido), presentó una *Demanda*[1] en contra de Caguax Auto Sales, Inc. (Caguax o peticionario) y Oriental Bank (Oriental o banco). En síntesis, alegó que el 5 de octubre de 2019, adquirió del peticionario un vehículo usado, marca Honda, modelo Ridgeline, color negro, número de tablilla 993-768, con número de registración (VIN) 5FPYK3F8XKB004922 (Ridgeline), mediante contrato al por menor a plazos. El balance pendiente del referido vehículo fue financiado a través de Oriental. Según expuesto por el recurrido en su demanda, Caguax le insistió que se llevara la unidad ese mismo día, a pesar de que todavía no se habían efectuado los trámites para el seguro de la Ridgeline, asegurándole que el vehículo estaría cubierto bajo la póliza de seguro del vendedor por treinta (30) días.[2] El recurrido expresó que, al día siguiente, y mientras hacía uso del vehículo, sufrió un accidente de tránsito en el Municipio de Bayamón, que le ocasionó daños a la unidad. Ese mismo día, De la Mata se comunicó con Caguax para tramitar la reclamación de daños, conforme instrucciones impartidas previamente por el concesionario. El recurrido explicó que, el 7 de octubre de 2019, Caguax se comunicó con él para informarle que era necesario llevar el vehículo a la Policía de Puerto Rico para expedir una certificación, sin expresarle la justificación para realizar dicho trámite o el propósito de la certificación. Según alegado por el recurrido, el 9 de octubre de 2019, Caguax le requirió copia de su póliza de seguros para la Ridgeline. Añadió que Caguax le reconoció no haberle provisto información sobre el historial del vehículo (Car Fax). El recurrido indicó que, el 11 de octubre de 2019, suscribió un *Contrato*

---

[1] Sobre entredicho provisional, *injunction* preliminar y permanente, sentencia declaratoria y daños y perjuicios. Véase, Entrada Núm. 1 del Sistema Unificado para el Manejo y Administración de Casos (SUMAC).
[2] *Íd.*, acápite número 13 de la *Demanda*.

*de Póliza de Automóvil Personal* con Seguros Múltiples de Puerto Rico (Seguros Múltiples) para brindar cobertura a la Ridgeline. Así las cosas, De la Mata alegó que Caguax se negó a cubrir los daños sufridos por el vehículo de motor y añadió que su mecánico le informó que la Ridgeline había sufrido daños mayores previos a la venta. Sobre el particular, alegó que, en la hoja que el concesionario le brindó como parte de la compraventa del vehículo, titulada *Guía del Consumidor,* solo se le informó que el vehículo había sido objeto de reparaciones de pintura en el lado izquierdo. Por lo anterior, De la Mata arguyó que Caguax no le había informado que el vehículo había sufrido daños mayores previo a la venta y que, a la fecha de la demanda, Caguax no hizo las gestiones de traspaso a favor del recurrido. Por lo anterior, el recurrido planteó que no ha podido obtener el marbete de la Ridgeline y no ha podido reparar los daños de ésta. Alegó que le han sido expedidas multas de tránsito por no poseer documentación vigente de inscripción y por tener el marbete e inspección vencidas. El recurrido adujo que, de conocer que el vehículo había sido previamente confiscado por la Policía o que tenía algún historial o conexión con actividad delictiva previa, no hubiese adquirido la unidad. Por lo anterior, solicitó varios remedios, en lo aquí pertinente, que declare nulo el contrato de compraventa entre De la Mata y Caguax, como consecuencia del dolo por parte del concesionario, y que declare nulo el contrato suscrito con Oriental, y se elimine la deuda contraída con ésta, además de una indemnización en concepto de daños y perjuicios sufridos y el pago de honorarios de abogado.

El 5 de enero de 2021, Caguax presentó *Contestación a Demanda[3],* en la que, en esencia, negó las alegaciones de dolo en su contra. De otro lado, Caguax alegó afirmativamente que le explicó a

---

[3] Entrada Núm. 20 de SUMAC.

De la Mata la necesidad de llevar el vehículo a reinscribir, que le informó que el vehículo había sido chocado y reparado, que le informó sobre la condición del vehículo y que De La Mata solicitó adquirir su póliza de seguro. También planteó que De la Mata, unilateralmente, decidió no llevar el vehículo a la División de Vehículos Hurtados para que autorizaran la nueva expedición de la licencia y el título. Por su parte, Oriental presentó también una *Contestación a Demanda* negando responsabilidad y alegando que el contrato de compraventa al por menor a plazos suscrito por De la Mata constituye una obligación contractual y sus términos y condiciones se rigen por las obligaciones del recurrido con Oriental.

Luego de varios trámites procesales, el 28 de marzo de 2025, Caguax presentó una *Moción Solicitando Sentencia Sumaria*[4]. En síntesis, alegó que no existía controversia real sustancial respecto a que el recurrido no tiene una causa de acción contra Caguax. Lo anterior, porque, luego de efectuarse el descubrimiento de prueba, no surge evidencia alguna de que Caguax hubiera incurrido en dolo. A solicitud del recurrido[5], el TPI le concedió un término para presentar su oposición a la solicitud de sentencia sumaria presentada por Caguax.[6] En más de una ocasión[7] Caguax solicitó que se diera por sometida la solicitud de sentencia sumaria, sin oposición. Luego de transcurridas varias concesiones de término a De La Mata para que presentara su oposición sin que así lo hiciera, el TPI emitió una *Orden* el 22 de mayo de 2025 en la que dio por sometida la solicitud de sentencia sumaria de Caguax, sin oposición del recurrido.

El 18 de junio de 2025, notificada ese mismo día, el foro recurrido emitió la *Resolución Interlocutoria* recurrida. El TPI emitió

---

[4] Entrada Núm. 165 de SUMAC.
[5] Entrada Núm. 170 de SUMAC.
[6] Entrada Núm. 173 de SUMAC.
[7] Véase, Entradas Núm. 171, 175 y 177.

27 determinaciones de hecho, de las cuales transcribimos las siguientes, por ser las atinentes a la controversia ante nos:

1. El demandante, Alejandro de la Mata Limardo, es mayor de edad, soltero, ingeniero, residente en Caguas, Puerto Rico; con dirección postal en Urbanización Valle San Luis 276, Vía de la Vereda, Caguas, Puerto Rico, 00725.

2. La parte codemandada, Caguax, es una corporación con fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, un concesionario de ventas de vehículos de motor, localizado en la Avenida Degetau D-11 Urbanización San Alfonso, Caguas, Puerto Rico, 00725.

3. El día 5 de octubre de 2019, la parte demandante compró a Caguax el vehículo usado marca Honda, modelo Ridgeline, color negro, con VIN 5FPYK3F8XKB004922 (Ridgeline), la cual compró por el precio $41,995.00.

4. El día 5 de octubre de 20219, la parte demandante suscribió libre y voluntariamente un documento intitulado "Guía del Consumidor" donde como parte de la compra de la Ridgeline 2019, donde se le certificó que el vehículo objeto de compra "**pudo** haber sido reparado." Además, en manuscrito indicó que "el lado izquierdo **fue pintado**".

[…]

6. El 5 de octubre de 2019, el demandante suscribió a favor de Oriental Bank, un Contrato de Venta Al Por Menor a Plazos mediante el cual financió la totalidad del precio de venta por la suma de $41,995.00 a un término de 84 meses.

7. Del documento intitulado "Car Fax" no se desprende que la Ridgeline hubiera sido declarada pérdida total ni tuviera daños reportados.

[…]

9. El 6 de octubre de 2019, el demandante tuvo un accidente en el vehículo Ridgeline, en el Municipio de Bayamón, mediante el cual el demandante fue impactado por otro vehículo de motor, resultando en daños al primer auto mencionado.

10. El 11 de octubre de 2019, el demandante obtuvo una Póliza de Automóvil Personal con la Cooperativa de Seguros Múltiples, para asegurar la Ridgeline.

[…]

15. La parte demandante al momento de la compra de la Ridgeline, no se percató o notó de algún daño o de golpe o de irregularidad en el vehículo.

16. El vehículo Ridgeline no estuvo envuelto en un acto delictivo.

17. El demandante, para obtener el marbete, se le notificó que tenía que inspeccionar y certificar la Ridgeline en Vehículos Hurtados, y el demandante optó por no hacerlo.

18. Con el propósito de registrar y certificar la Ridgeline, el demandante no llevó la unidad a DTOP ni tampoco llevó la Ridgeline al dealer demandado (Caguax) para que éstos llevaran la Ridgeline al DTOP para lograr su registro.

19. La parte demandante continuó utilizando la Ridgeline a pesar de que la misma no contaba con marbete vigente.

[…]

23. La parte demandante adviene en conocimiento de la reparación y pintura de la Ridgeline, porque Gerente de Caguax, el Sr. José Rodríguez, le informó las condiciones de la unidad.

24. El demandante tomó la decisión voluntariamente de comprar y adquirir la unidad.

25. Lo informado por el Gerente José Rodríguez, **en cuanto a la pintura de la Ridgeline**, coincide con la misma área del vehículo que el perito del demandante indicó que fueron mal reparadas.

26. El 8 de septiembre de 2022, los técnicos automotriz Luis A. Cruz y Roy Rodríguez realizaron una inspección de la Ridgeline, para [la] cual rindieron un Informe Pericial. **En el mismo determinaron que la Ridgeline estuvo envuelta en una colisión sustancial y ameritaba el remplazo de ambas puertas del lado izquierdo. No obstante, las mismas fueron reparadas de manera incorrecta e inadecuada.**

27. El informe pericial del demandante suscrito por los técnicos automotrices Luis A. Cruz y Roy Rodríguez no establece fecha, lugar y tiempo del alegado choque. (Énfasis nuestro).

En vista de las anteriores determinaciones, el foro primario determinó como hechos en controversia, los siguientes:

1. Si la parte codemandada Caguax le informó a la parte demandante sobre todas las reparaciones, que, a su conocimiento, había tenido el vehículo Ridgeline.

2. Si Caguax incurrió en dolo contractual que amerite la recisión del contrato.

A la luz de lo anterior, el TPI determinó que no se encuentran claros todos los hechos materiales en relación con Caguax. El foro *a quo* consignó que albergaba dudas respecto a si Caguax en efecto le informó a De la Mata todas las reparaciones, que, a su conocimiento, había tenido la Ridgeline. Enfatizó que el incluir una declaración jurada *self serving* suscrita por el presidente de Caguax, no disipaba

esas dudas. Por tanto, el TPI concluyó que esa controversia era medular para poder determinar si Caguax incurrió en dolo contractual. Consecuentemente, el TPI declaró No Ha Lugar la solicitud de sentencia sumaria presentada por Caguax.

Inconforme, Caguax solicitó reconsideración el 3 de julio de 2025[8]. El TPI denegó la solicitud de reconsideración mediante *Resolución*[9] emitida y notificada el 18 de julio de 2025.

Insatisfechos, Caguas acude ante esta Curia vía recurso de *certiorari* y formula los siguientes señalamientos de error:

A. Erró el <u>Honorable TPI</u> al declarar NO HA LUGAR la Moción Solicitando Sentencia Sumaria por entender que el Tribunal alberga dudas sobre la información que brindó la peticionaria Caguax al peticionario al momento de la compra de la Ridgeline, y sobre las alegaciones de dolo, sin embargo, el Tribunal no tomó en cuenta las manifestaciones verbales y escritas realizadas por Caguax al demandante sobre las condiciones de la Ridgeline.

B. Erró el <u>Honorable TPI</u> al declarar NO HA LUGAR la Moción Solicitando Sentencia Sumaria, sin embargo, la peticionaria demostró que no existen hechos medulares en controversias sobre las alegaciones de la demanda, por lo tanto, procedía dictar sentencia sumaria por no constar controversias de hechos.

C. Erró el <u>Honorable TPI</u> al declarar NO HA LUGAR la Moción Solicitando Sentencia Sumaria, cuando las declaraciones y hechos bajo juramento propuestos como incontrovertidos, no fueron contradichos ni refutados ni impugnados, por cuanto el Honorable TPI debió tomarlos como hechos probados.

## II

## A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo

---

[8] Entrada núm. 179 de SUMAC (CG2020CV02440).
[9] Entrada Núm. 183 de SUMAC.

abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*,

funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez,* supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre

que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un

remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte

promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales

materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 80 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García*, supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de

Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.,* supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su recurso, Caguax plantea que el Tribunal de Primera Instancia erró al denegar la solicitud de sentencia sumaria. Lo anterior, porque entiende que el foro recurrido no tomó en cuenta las manifestaciones verbales y escritas realizadas por Caguax respecto a las condiciones de la Ridgeline, que Caguax demostró que no existen hechos medulares en controversia sobre las alegaciones de la demanda, y que las declaraciones y hechos bajo juramento no fueron contradichos, refutados ni impugnados, por lo que el TPI debió tomarlos como hechos probados.

Hemos evaluado el recurso de epígrafe conforme exige la normativa antes expuesta, con particular atención a los criterios que le corresponde utilizar al Tribunal de Apelaciones al momento de revisar determinaciones del foro de instancia, según *Meléndez González et al. v. M. Cuebas,* supra. Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de sentencia sumaria promovida por Caguax, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar *de novo* los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el Tribunal de Primera Instancia actuó de conformidad con las normas que prevalecen en la materia que atendemos. Ello, nos hace concluir que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que

nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos antes expuestos, denegamos la expedición del *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Salgado Schwarz está conforme con la decisión a la que ha llegado el panel, y en adición, desea expresar que, si bien la *Resolución* dictada por el TPI debe servir como mapa en cuanto a los hechos probados sobre los cuales no hay controversia y aquellos en los que sí la hay, el segundo hecho en controversia dispuesto por el TPI es en realidad una conclusión de derecho a la que tiene que llegar el magistrado cuando examine la prueba en su totalidad. Sin embargo, este Juez añadiría a la discusión de los hechos por probarse en su momento, el conocimiento que los representantes del peticionario tuviesen sobre el estado procesal de la registración de la unidad, ya que parece que la mano izquierda no sabe lo que la mano derecha estuvo haciendo con ese vehículo. En los autos del caso hay prueba de que la unidad fue declarada pérdida total, y por otro, que ésta "pudo ser reparada". Este elemento debe ser materia de prueba en el Juicio en su Fondo.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones