ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **YAMIL A. MONTALVO RIVERA**<br><br>Recurrido<br><br>v.<br><br>**MAYAGUEZ MEDICAL CENTER, et als.**<br><br>Demandados<br><br><br>**Dra. IVETTE RAMÍREZ CEBOLLERO**<br><br>Peticionaria | KLCE202400469 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Mayagüez**<br><br><br>Civil Núm.: **MZ2022CV01838**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Comparecen ante nos la doctora Ivette Ramírez Cebollero (Dra. Ramírez Cebollero) y SIMED, como aseguradora de la Dra. Ramírez (en conjunto, peticionaria) y nos solicitan, mediante *Recurso de Certiorari*, que revoquemos la *Resolución*[1] emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante la *Resolución*, el TPI denegó una *Moción de Desestimación*[2] presentada por la parte peticionaria.

Por los fundamentos que discutiremos a continuación, denegamos expedir el auto solicitado y devolvemos el caso al TPI para que continúen los procedimientos.

---

[1] Apéndice del *Recurso de Apelación*, Anejo I, págs. 1-8. Notificada y archivada en autos el 22 de febrero de 2024.
[2] *Íd.*, Anejo VI, págs. 58-69.

Número Identificador
RES2024 _____

# I.

El caso de marras originó el 6 de diciembre de 2022, cuando el señor Yamil A. Montalvo Rivera (Sr. Montalvo Rivera o demandante) presentó una *Demanda*[3] en contra de la Dra. Ramírez Cebollero, SIMED y el Mayagüez Medical Center, por una alegada impericia médica (en conjunto, demandados). En síntesis, el Sr. Montalvo Rivera alegó que estos responden por los daños que sufrió luego de ser atendido por los demandados.

Según los hechos alegados en la *Demanda*, el 17 de septiembre de 2020, el Sr. Montalvo Rivera sufrió un accidente de motora de monte en el cual recibió múltiples traumas, incluyendo una herida abierta en su pierna izquierda. Fue llevado a la sala de emergencia del CDT de Maricao, donde el doctor Augusto Álvarez Castillo limpió la herida en la pierna izquierda y le tomó veinte (20) puntos de sutura. Fue dado de alta de la sala de emergencia del CDT con medicamentos.

Esa noche, luego de haber sido dado de alta, el Sr. Montalvo Rivera sintió fiebre y comenzó a sangrar profusamente de la herida. Ante esto, su madre llamó una ambulancia que los llevó a la sala de emergencia del Mayagüez Medical Center en la madrugada del 18 de septiembre de 2020. Ahí, fue tratado por la Dra. Ramírez Cebollero, que ordenó que le realizaran varios estudios radiológicos. Eventualmente, le dieron de alta con antibióticos. Entre el 18 y 25 de septiembre de 2020, el Sr. Montalvo Rivera acudió al CDT para limpieza de la herida, según ordenado previamente.

Para el 25 de septiembre de 2020, el Sr. Montalvo Rivera se quejó de sentir molestia y dolor en el área de la herida y que la misma se había puesto negra con burbujas. Por esto, acudió al Mayagüez Medical Center, donde fue admitido con diagnóstico de

---

[3] *Íd.*, Anejo IV, págs. 35-45.

herida necrótica, enfisema traumático e infección. Fue consultado para cirugía y varios estudios de la herida, realizadas entre el 26 de septiembre y 7 de octubre de 2020.

Como consecuencia de lo ocurrido, el 6 de diciembre de 2022, el Sr. Montalvo Rivera presentó una *Demanda* ante el TPI. En esta, alegó que los demandados responden por su negligencia al no haber realizado una consulta de cirugía cuando el Sr. Montalvo Rivera acudió a la sala de emergencia del Mayagüez Medical Center el 18 de septiembre de 2020. Sostuvo que esta negligencia le causó daños ante la falta de manejo temprano del tipo de lesión, conllevando esto a complicaciones, infecciones y necrosis. Por esto, alegó que también sufrió profundos dolores, molestias, imposibilidad de caminar, incomodidad, cirugías, necesidad de viajar a los Estados Unidos en busca de opiniones médicas para mejorar su condición de salud y angustias mentales, entre otros daños.

El 17 de marzo de 2023, los demandados contestaron la *Demanda.* Luego de varios trámites procesales, el 29 de septiembre de 2023, la Dra. Ramírez Cebollero y SIMED solicitaron la desestimación del caso en su contra invocando inmunidad al amparo del Código de Seguros, 26 LPRA sec. 4105. En dicha comparecencia, la Dra. Ramírez Cebollero alegó que desde el 15 de julio de 2002, ella tiene privilegios médicos activos con el Mayagüez Medical Center, propiedad del Municipio de Mayagüez. Sostuvo que tanto al amparo del Código de Seguros, como la Ley de Pleitos Contra el Estado, 32 LPRA sec. 3077, los médicos que brindan servicios en dicha institución están cobijados por una inmunidad contra demandas. Alegó que por ser una contratista independiente empleada por Mayagüez Medical Center, está cobijada por dicha inmunidad.

El 18 de octubre de 2023, el demandante se opuso. En su *Oposición,* la parte demandante alegó que no procedía la

desestimación de la *Demanda* por, entre otras razones, no existir un contrato de servicios profesionales entre la Dra. Ramírez Cebollero y el Mayagüez Medical Center.

Luego de considerar los argumentos de las partes, el 20 de febrero de 2024, el TPI determinó No Ha Lugar a la *Moción de Desestimación*. En dicha *Resolución*, el TPI concluyó que:

> Es importante destacar que de la prueba que obra en autos no se sustenta la aplicabilidad de "la inmunidad absoluta" a la Dra. Ivette Ramírez Cebollero, mucho menos a su aseguradora, SIMED. Como cuestión de realidad, la Dra. Ramírez alega tener un **contrato verbal** con Mayagüez Medical Center; entidad privada que opera y administra el Centro Médico de Mayagüez-Hospital Ramón Emeterio Betances. **Desconocemos los pormenores de dicha contratación y en calidad de qué se llevó a cabo. Todo ello requiere aportar prueba que establezca la existencia del alegado contrato verbal**. Solo así podremos evaluar, en su momento, la procedencia de su reclamo. Por ende, no podemos desestimar la causa de acción, sin más, solo sustentándonos en las alegaciones de la codemandada.[4]

El 7 de marzo de 2024, la Dra. Ramírez Cebollero y SIMED presentaron una *Moción de Reconsideración*, la cual fue denegada el 2 de abril de 2024 y notificada el 4 de abril del año corriente. Inconformes, el 26 de abril de 2024, los peticionarios presentaron el *Recurso de Certiorari* ante nuestra consideración. Señalan como único error:

> **ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE A LA CODEMANDADA Y A SU COMPAÑÍA DE SEGUROS SIMED NO LE COBIJA LA INMUNIDAD ESTABLECIDA EN EL ART. 41.050 DEL CÓDIGO DE SEGUROS, 26 LPRA 4105, POR NO TENER CONTRATO DE SERVICIOS PROFESIONALES CON MAYAGÜEZ MEDICAL CENTER.**

## II.

El auto de certiorari es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders et al. v.*

---

[4] *Íd.* Anejo I, pág. 7. (Énfasis nuestro y en la original).

*BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). Trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

La Regla 52.1 de Procedimiento Civil dispone que un recurso de certiorari sólo será expedido cuando se recurra de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (Injunctions) de Procedimiento Civil o una denegatoria de una moción de carácter dispositivo. Además de lo anterior, y a modo de excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre: 1) la admisibilidad de testigos de hecho o de peritos esenciales; 2) asuntos relativos a privilegios probatorios; 3) anotaciones de rebeldía; 4) casos de relaciones de familia; 5) casos que revistan interés público; o, 6) cualquier otra situación en la cual esperar la apelación constituiría un fracaso irremediable de la justicia.

Una vez adecuadamente presentado un recurso de certiorari, el Tribunal de Apelaciones deberá ejercer su discreción y evaluar la petición tomando en consideración los criterios enumerados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Deberá evaluar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Aun así, cuando el Tribunal de Apelaciones determina, en su sana discreción, denegar la expedición de un recurso de certiorari, no tiene que fundamentar su determinación. *Íd.*, R. 52.1.

## III.

Luego de evaluar los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y de la Regla 40 de este Tribunal, *supra*, procede la denegación de la expedición del *Recurso de Certiorari* presentado. De la propia determinación del TPI, surge que este no estaba en condiciones para adecuadamente resolver las controversias planteadas, por lo que es necesaria la presentación de prueba sobre cuestiones medulares. Particularmente, el TPI determinó que es necesario pasar prueba sobre la relación laboral entre la Dra. Ramírez Cebolleros y el Mayagüez Medical Center para determinar si le cobija la inmunidad del Código de Seguros y de la Ley de Pleitos Contra el Estado. Le damos deferencia a dicha determinación, que no consideramos irrazonable o contraria al derecho.

## IV.

Por las razones discutidas, denegamos expedir el *Recurso* solicitado. Devolvemos el caso al TPI para que continúen los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones