Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL V- DJ 2024-062C

| | | |
|---|---|---|
| LETICIA RAMOS OLIVENCIA Y OTROS<br><br>**Recurridos**<br><br>V.<br><br>HOSPITAL SAN ANTONIO, INC. Y OTROS<br><br>**Peticionarios** | TA2025CE00796 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Mayagüez<br><br>Civil Núm.<br><br>MZ2024CV00203<br><br>Sobre:<br><br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Juez Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

El 21 de noviembre de 2025, el Dr. Oscar I. Laboy (doctor Laboy), la Sra. De Dr. I. Laboy, y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Laboy) así como los Sindicatos de Aseguradores para la Suscripción conjunta de Seguros de Responsabilidad Profesional Médico Hospitalaria (SIMED), aseguradora del doctor Laboy (en conjunto, los peticionarios), comparecieron ante nos mediante *Petición de Certiorari* y solicitaron la revisión de una *Resolución* que se emitió el 25 de septiembre de 2025 y se notificó el 29 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la solicitud de desestimación presentada por los peticionarios.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

I.

El 25 de abril de 2024, la Sra. Leticia Ramos Olivencia, por sí y en representación de su hija, la Sra. Lyzbeth M. González Ramos (señora Lizbeth), y de sus nietas, JRG y ARG; el Sr. Jorge González, su esposa, la Sra. Ivette Robles, la Sociedad Legal de Gananciales compuesta por ambos y la Sra. Gladys González Ramos (en conjunto, los recurridos) presentaron una *Demanda Enmendada* sobre impericia médica, daños y perjuicios en contra del Hospital San Antonio, Inc., la Dra. Mabel Bonilla Rodríguez (doctora Bonilla), el matrimonio Laboy, SIMED, entre otros de nombres desconocidos (en conjunto, los codemandados).[1] En síntesis, sostuvieron que, el 10 de febrero de 2023, la señora Lyzbeth, acudió al Hospital San Antonio en Mayagüez junto a su hermana para someterse a una histerectomía supra cervical bajo el cuidado de su ginecóloga, la doctora Bonilla. Esbozaron que, durante la intervención surgieron múltiples complicaciones, tanto quirúrgicas como relacionadas con la anestesia[2], que presuntamente ocurrieron por la negligencia y omisiones de los codemandados. Alegaron que, estas complicaciones provocaron que la señora Lyzbeth sufriera un arresto cardiorrespiratorio que resultó en una encefalopatía hipóxica y, en consecuencia, un daño cerebral permanente e irreversible. Expresaron que, desde ese día, la paciente quedó postrada en cama.

Indicaron que, durante ese periodo, el personal médico, de enfermería y paramédico del Hospital San Antonio no brindó la atención ni el cuidado necesario, aun cuando ellos insistieron y suplicaron por una intervención adecuada. Plantearon que esa falta de cuidado contribuyó al deterioro de la señora Lyzbeth y al estado

---

[1] *Véase*, Entrada Núm. 102, SUMAC TPI.
[2] El doctor Laboy fue el anestesiólogo de la señora Lyzbeth durante su procedimiento quirúrgico.

crítico en el que permanece. Por todo lo anterior, reclamaron indemnización por concepto de daños y perjuicios por impericia médica.

Tras varios trámites procesales, el 18 de junio de 2025, los peticionarios presentaron una *Moción de Desestimación.*[3] Indicaron que, el 1 de enero de 2013, el Hospital San Antonio, Inc. suscribió un *Contrato de Servicios de Anestesia y Manejo de Dolor* con el doctor Laboy, mediante el cual este último se comprometió a proveer servicios de anestesiología y manejo del dolor las veinticuatro horas del día, los siete días de la semana, en todas las cirugías electivas, ambulatorias y de emergencia realizadas en las facilidades del Hospital San Antonio en Mayagüez. Aseguraron que, este contrato estuvo vigente de forma ininterrumpida desde el 1 de enero de 2013 hasta el 14 de abril de 2025.

Expresaron que, según alegado en la *Demanda* y *Demanda Enmendada,* los hechos objeto de esta acción ocurrieron el 10 de febrero de 2023 en las instalaciones del Hospital San Antonio. Alegaron que, para esa fecha, el contrato entre el doctor Laboy y el Hospital se encontraba plenamente vigente. De igual modo, puntualizaron que, las alegaciones de los recurridos reconocían que el doctor Laboy brindó tratamiento médico a la señora Lyzbeth en su carácter de anestesiólogo, ejecutando funciones inherentes a sus deberes contractuales durante un procedimiento quirúrgico realizado por la doctora Bonilla.

En vista de lo anterior, indicaron que, aun evaluando las alegaciones de la forma más favorable a la parte recurrida, resultaba forzoso concluir que: (1) el doctor Laboy es un profesional de la salud; (2) que prestó servicios médicos a la señora Lyzbeth en el Hospital San Antonio de Mayagüez; (3) que su intervención ocurrió

---

[3] *Véase,* Entrada Núm. 249, SUMAC TPI.

en el curso ordinario del cumplimiento de sus funciones como anestesiólogo contratado por dicha institución; y (4) que dichos servicios se brindaron en virtud del contrato vigente entre las partes al momento de los hechos.

En consecuencia, argumentaron que, al doctor Laboy le cobijaba la inmunidad estatutaria establecida en el Art. 41.050 la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el *Código de Seguros de Puerto Rico*, 26 LPRA sec. 4105 (Código de Seguros). Indicaron que, dicho artículo disponía expresamente que ningún profesional de la salud podía ser incluido como parte demandada en una acción civil por impericia médica por actos realizados en cumplimiento de sus funciones en el Hospital San Antonio de Mayagüez. Sostuvieron que, la Exposición de Motivos de la Ley Núm. 278-2012 que enmendó el referido artículo confirmaba que la intención legislativa fue conferir inmunidad a los médicos que laboraran en dicha institución y extender a estos los límites de responsabilidad aplicables a las reclamaciones contra el Estado conforme a la Ley Núm. 104 de 29 de junio de 1955. Asimismo, manifestaron que, posteriormente, la Ley Núm. 99-2017 reafirmó y amplió esta protección, reiterando la prohibición de demandar a profesionales de la salud —empleados o contratistas— por los servicios rendidos en cumplimiento de sus funciones en este hospital.

A la luz de este marco normativo, argumentaron que, siendo incuestionable que el doctor Laboy actuó en pleno cumplimiento de sus deberes y obligaciones para con el Hospital San Antonio al momento de los hechos alegados, se encontraba cobijado por la inmunidad absoluta establecida por el Art. 41.050 del Código de Seguros, *supra*. En consecuencia, insistieron que no existía una causa de acción válida en su contra y, por ende, procedía la desestimación de la Demanda de epígrafe.

Por su parte, el 3 de julio de 2025, los recurridos presentaron su *Moción en Oposición a Solicitud de Desestimación* [...].[4] Argumentaron que el doctor Laboy no había demostrado haber actuado como empleado o contratista del Municipio de Mayagüez ni de entidad estatal alguna al momento de los hechos. Señalaron que el contrato que se presentó como base para la alegada inmunidad fue suscrito el 1 de enero de 2013 por una corporación privada — Servicios de Anestesia y Manejo del Dolor San Antonio, Inc. (S.A.M.D.S.A.)— de la cual el doctor Laboy era presidente, y cuya vigencia, según sus propias cláusulas, culminó automáticamente en octubre de 2015. Resaltaron que, la corporación S.A.M.D.S.A. fue cancelada por el Departamento de Estado el 31 de diciembre de 2019. No obstante, puntualizaron que, en el Anejo 2 sometido junto a la moción de desestimación aparecía otro documento firmado el 14 de abril de 2025 —diez años después del vencimiento original y posterior a la radicación de la Demanda— en el que el doctor Laboy volvía a firmar como presidente de S.A.M.D.S.A., pese a que la corporación ya había sido cancelada desde 2019.

En vista de lo antes expuesto, plantearon que, si el contrato de 2013 expiró automáticamente en octubre de 2015, resultaba cuestionable que el doctor Laboy no había presentado copia de un contrato vigente con la corporación Hospital San Antonio, Inc. o con el Municipio de Mayagüez para la fecha de los hechos del 10 de febrero de 2023. Destacan que no se había demostrado quién facturó los servicios de anestesia prestados ese día ni bajo qué relación jurídica se realizó tal facturación. Además, indicaron que no existía evidencia de que el doctor Laboy tuviera un contrato personal con el Municipio de Mayagüez, requisito indispensable

---

[4] *Véase*, Entrada núm. 259, SUMAC TPI.

para la aplicación de la inmunidad bajo el Art. 41.050 del Código de Seguros, *supra.*

A su juicio, los documentos sometidos por el propio doctor Laboy revelaban que no existía un contrato vigente durante el periodo relevante, que la entidad que supuestamente lo representaba estaba cancelada desde 2019, y que el único intento de convalidación contractual se produjo en 2025, después de la radicación de la demanda. Añadieron que el contrato suscrito entre el Municipio de Mayagüez y la corporación Hospital San Antonio, Inc. establecía que era esta entidad privada, y no el Municipio, quien contrataba y remuneraba a los profesionales de la salud necesarios, debiendo asumir también las pólizas de seguro de responsabilidad, incluido el seguro de impericia médica exigido al doctor Laboy. Por tanto, expresaron que la relación existente, según los documentos presentados, era exclusivamente entre el doctor Laboy (a través de S.A.M.D.S.A.) y la corporación privada Hospital San Antonio, Inc., sin vínculo alguno con el Municipio.

Con base en la jurisprudencia del Tribunal Supremo, señalaron que la inmunidad estatutaria solo aplicaba cuando el médico demostraba una relación contractual directa con el Estado o el municipio, lo cual no se daba aquí. Citaron decisiones como *Rodríguez Ruiz v. Hospital San Jorge* y *Flores Román v. Ramos González* para sostener que la mera prestación de servicios en una instalación pública administrada por una entidad privada no convertía al profesional en empleado ni agente del Estado. Por ello, afirmaron que en este caso no se satisfacían los criterios jurisprudenciales para activar la inmunidad del Art. 41.050 del Código de Seguros, *supra.*

Asimismo, argumentaron que una desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R.10.2 era improcedente debido a que existían múltiples controversias sustanciales de

hechos —relacionadas con la vigencia contractual, la identidad del contratante real, la naturaleza del vínculo jurídico y la inexistencia de contratación estatal— que requerían descubrimiento de prueba. Indicaron que, aunque el TPI previamente denegó una solicitud de desestimación similar presentada por la codemandada, doctora Bonilla, cada moción debía evaluarse según sus particularidades fácticas y documentales.

Finalmente, insistieron en que el Art. 41.050 del Código de Seguros, *supra*, no extendía inmunidad a médicos que operaban bajo relaciones privadas ni a especialistas en anestesiología que no actúan como empleados o contratistas directos del Estado o sus municipios. Ante la ausencia de un contrato vigente con el Municipio de Mayagüez y considerando que la corporación a través de la cual el doctor Laboy operaba estaba cancelada desde 2019, concluyeron que no existía base legal para la inmunidad reclamada. Por ello, solicitaron que la moción de desestimación fuese declarada No Ha Lugar, que se permitiera el descubrimiento de prueba, y que se impusieran costas y honorarios por la alegada temeridad de los codemandados.

Evaluados los escritos de las partes, el 25 de septiembre de 2025, el TPI emitió una *Resolución* que se notificó el 29 de septiembre de 2025.[5] Luego de exponer la relación fáctica y procesal del caso y la normativa aplicable, concluyó que no procedía la desestimación solicitada al amparo de la inmunidad consagrada en el Art. 41.050 del Código de Seguros de Puerto Rico, *supra.* Particularmente, determinó que la prueba que obraba en autos no sustentaba la aplicación de la denominada "inmunidad absoluta" al doctor Laboy, ni mucho menos a su aseguradora, SIMED. Señaló que el doctor Laboy fundamentó su reclamo de inmunidad en un

---

[5] *Véase*, Entrada Núm. 270, SUMAC TPI.

contrato suscrito en 2013 entre el Hospital San Antonio, Inc. y la S.A.M.S.D.A., de la cual formaba parte, alegando que dicho acuerdo lo convertía en contratista del hospital. Sin embargo, indicó que el contrato estaba suscrito por el Hospital San Antonio Inc. y la referida corporación, no por el doctor Laboy de manera personal, y que el documento no establecía que él sería quien prestaría los servicios. Asimismo, resaltó que los propios términos del contrato disponían su terminación automática a la fecha de vencimiento.

Asimismo, tomó en consideración la prueba presentada que demostraba que S.A.M.S.D.A. fue cancelada el 31 de diciembre de 2019, lo que impedía concluir que podía otorgarse una extensión o adendum a un contrato de una entidad inexistente al momento de la supuesta firma. Además, sostuvo que el doctor Laboy no había presentado evidencia alguna que demostrara la existencia de un contrato personal con el Hospital San Antonio vigente para la fecha de los hechos. En cambio, puntualizó que su planteamiento descansaba en un contrato expirado y en un adendum firmado con posterioridad tanto a los hechos del caso como a la cancelación de la corporación contratante.

Reconoció que la ley disponía que los profesionales de la salud —sean empleados o contratistas— que actuaran en el cumplimiento de sus deberes en el Hospital San Antonio de Mayagüez y sus dependencias no podían ser incluidos como demandados. No obstante, enfatizó que para que dicha inmunidad aplicara, debía demostrarse que la persona que la reclamaba era efectivamente un empleado o contratista del hospital. Concluyó que el doctor Laboy no había demostrado tal extremo, pues no logró establecer la existencia de un contrato vigente entre él y el Hospital San Antonio al momento de los hechos.

Por los motivos antes expuestos, resolvió que, tomando como ciertos los hechos correctamente alegados en la Demanda y viéndolos de la manera más favorable a la parte recurrida, no procedía la desestimación solicitada. En consecuencia, declaró No Ha Lugar la moción de desestimación presentada por los peticionarios y ordenó la continuación de los procedimientos.

En desacuerdo con esta determinación, el 14 de octubre de 2025, los peticionarios presentaron una solicitud de reconsideración.[6] En primer lugar, señalaron que el doctor Laboy es un médico anestesiólogo autorizado en Puerto Rico y que, para la fecha de los hechos alegados, brindaba servicios de forma exclusiva al Hospital San Antonio, Inc. conforme a un contrato vigente entre las partes. Explicaron que, al momento de otorgar el *Contrato de Servicios de Anestesia y Manejo del Dolor*, comparecieron el Hospital San Antonio, representado por su director ejecutivo, y el doctor Laboy en su carácter personal como médico autorizado. Destacaron que el contrato lo identificaba expresamente como "Contratista Independiente" y que en ningún lugar se indicaba que comparecía únicamente como representante de una corporación ni que esta fuera la única obligada contractual. En cambio, puntualizaron que, el texto contractual dejaba claro que el doctor Laboy asumió personalmente obligaciones profesionales y que cumplía con todas las licencias y permisos requeridos para ejercer la anestesiología en Puerto Rico.

Asimismo, detallaron que el contrato establecía obligaciones específicas para el doctor Laboy, tales como organizar un servicio de anestesia conforme a las necesidades del hospital y proveer servicios las veinticuatro horas del día, los siete días de la semana, para todas las cirugías electivas, ambulatorias y de emergencia. Expusieron

---

[6] *Véase*, Entrada Núm. 279, SUMAC TPI.

que también establecía que debía cumplir con los procedimientos establecidos por el Hospital San Antonio Inc. Argumentaron que, aunque el contrato original tenía una fecha de vencimiento del 31 de octubre de 2015, los acuerdos y obligaciones se mantuvieron vigentes de forma ininterrumpida, pues el doctor Laboy continuó prestando los mismos servicios al Hospital San Antonio Inc. Indicaron que habían presentado un contrato adicional suscrito el 14 de abril de 2025 y una declaración jurada del propio doctor Laboy afirmando que la relación contractual se extendió sin interrupción desde 2013 hasta esa fecha.

Por otro lado, argumentaron que, aun si la corporación previamente presidida por el doctor Laboy hubiese sido cancelada, ello no afecta la vigencia de sus obligaciones personales, pues el contrato lo identificaba directamente como Contratista Independiente y no excluía su responsabilidad individual. Además, señalaron que, no existía controversia sobre su condición de anestesiólogo ni sobre su participación en el procedimiento quirúrgico realizado el 10 de febrero de 2023, y que no se había presentado evidencia que impugnara que actuó en cumplimiento de sus funciones contractuales con el hospital.

Insistieron que, dado este cuadro fáctico, el doctor Laboy se encontraba cobijado por la inmunidad estatutaria conferida por el Artículo 41.050 del Código de Seguros de Puerto Rico, *supra*, el cual prohibía incluir como demandados a los profesionales de la salud —empleados o contratistas— que actuaran en el cumplimiento de sus funciones en el Hospital San Antonio de Mayagüez y sus dependencias. Añadieron que la legislación aplicable, incluyendo la Ley Núm.278-2012 y la Ley Núm. 99-2017, reforzaban esta protección y extendían al Hospital San Antonio los límites de responsabilidad aplicables al Estado. De igual forma, citaron

jurisprudencia del Tribunal Supremo, para sostener que esta inmunidad equivalía a la inexistencia de una causa de acción.

Por último, reiteraron que, conforme a las alegaciones de la *Demanda* y la *Demanda Enmendada,* los hechos ocurrieron mientras el doctor Laboy prestaba servicios médicos en el hospital bajo su contrato vigente. Por lo tanto, concluyeron que el doctor Laboy era un profesional de la salud que actuó en cumplimiento de sus funciones como anestesiólogo del Hospital San Antonio y que, en virtud de la inmunidad estatutaria, no existía una causa de acción válida en su contra. En atención a todo lo anterior, solicitaron al Tribunal que dejara sin efecto la resolución previa, declarara Ha Lugar la moción de reconsideración y dictara sentencia desestimando la demanda con perjuicio respecto a los peticionarios.

Posteriormente, el 20 de octubre de 2025, los recurridos presentaron una oposición a la solicitud de reconsideración.[7] Allí señalaron que, en un intento de revertir la determinación del Tribunal, los peticionarios anejaron por primera vez, una Declaración Jurada suscrita por el doctor Laboy el 24 de septiembre de 2025, es decir, el mismo día en que el Tribunal emitió su *Resolución.* Sostuvieron que dicha declaración era "self-serving" y contenía alegaciones nunca planteadas en la moción de desestimación original, por lo que no podía considerarse evidencia nueva. Argumentaron que toda la información consignada —la alegada relación contractual, la forma de prestación de servicios y la supuesta continuidad del contrato— era conocida o debió ser conocida por el propio doctor Laboy desde antes de presentar su solicitud original, por lo que no constituía un hecho sobrevenido sino un intento de corregir deficiencias señaladas por el Tribunal.

---

[7] *Véase,* Entrada Núm. 280, SUMAC TPI.

Enfatizaron que, la declaración jurada consistía únicamente en una manifestación unilateral del doctor Laboy, sin certificación del Hospital San Antonio ni evidencia independiente que confirmara su contenido. Además, puntualizaron que fue firmado el mismo día en que se emitió la *Resolución* recurrida, lo que demostraba que no se trataba de prueba obtenida con posterioridad al dictamen. Añadieron que tampoco acreditaba que el doctor Laboy tuviera, en su carácter personal, un contrato vigente con el Hospital San Antonio o con el Municipio de Mayagüez. Por ello, sostuvieron que no debía concedérsele valor probatorio, ya que respondía únicamente al interés del declarante en revertir una decisión adversa.

De igual forma, indicaron que, en la moción de reconsideración, el doctor Laboy introdujo una teoría completamente nueva —no incluida en la moción de desestimación— al alegar que el contrato de 2013 lo convertía en una "extensión operacional del Hospital" o le confería una "franquicia exclusiva" para proveer servicios de anestesia 24/7. Argumentaron que tales caracterizaciones no surgían de los contratos sometidos como Anejos 1 y 2, que no apoyaban la existencia de una franquicia ni un carácter personal. Además, reiteraron que, dicho contrato fue suscrito por una entidad privada cancelada desde 2019, cuya vigencia original culminó en 2015, y que la presunta renovación de 2025 carecía de fuerza legal y credibilidad. Concluyeron que estas alegaciones constituían planteamientos nuevos que excedían el marco de una reconsideración, la cual no podía utilizarse para presentar teorías o hechos que pudieron haberse planteado oportunamente.

Por otro lado, expusieron que el Tribunal actuó correctamente al concluir que no se sustentaba la inmunidad absoluta del doctor Laboy ni de su aseguradora SIMED. Citaron jurisprudencia reciente,

para resaltar que las inmunidades son excepciones de carácter personal y que las aseguradoras privadas no pueden beneficiarse de los límites de responsabilidad aplicables al Estado. Explicaron que SIMED operaba como aseguradora comercial y no como entidad estatal, por lo que no podía invocar la inmunidad del Artículo 41.050 del Código de Seguros. Por todo lo anterior, solicitaron que la moción de reconsideración fuese declarada sin lugar y que se mantuviese íntegramente la *Resolución* del Tribunal.

Atendidos los argumentos de ambas partes, el 23 de octubre de 2025, el TPI dictó y notificó una *Resolución a Reconsideración* denegando la solicitud de reconsideración presentada por los peticionarios.[8] Aún inconforme, el 21 de noviembre de 2025, los peticionarios presentaron el recurso de epígrafe y formularon el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al determinar que, al codemandado, Dr. Oscar Laboy Roldós no le cobija la inmunidad establecida por el Art. 41.050 del Código de Seguros, 26 LPRA 4105, por no tener un contrato vigente entre este y el Hospital San Antonio.**

El mismo día de la presentación del recurso de epígrafe, los recurridos presentaron su *Oposición a Expedición del Auto Certiorari.* En consecuencia, con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o

---

[8] *Véase,* Entrada Núm. 283, SUMAC TPI.

varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o

cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones